Bruce Bennett REED, Appellant,

v.

STATE of Indiana, Appellee.

No. 1283 S 447.

Supreme Court of Indiana.

June 25, 1985.

Charles C. Rhetts, Jr., DeKalb County Public Defender, Auburn, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Bruce Bennett Reed was tried by a jury in the DeKalb Superior Court and was found guilty but mentally ill of murder [Count I] and attempted murder [Count II]. He subsequently was sentenced by the trial court to a term of forty years imprisonment on Count I and thirty-five years imprisonment on Count II, said sentences to be served concurrently. Eight issues are alleged and presented for our consideration in this direct appeal as follows:

1. juror irregularity;

2. failure of the State to provide Defendant with exculpatory evidence;

3. need for a new trial based on newly discovered evidence;

4. insufficiency of proof regarding cause of death;

5. jury verdicts being contrary to law;

6. refusal of Defendant's tendered final instruction No. 3;

7. error in sentencing; and

8. placement of Defendant in a maximum security facility.

On the morning of December 19, 1981, sixteen year-old Defendant Reed took a shotgun and fired two times at his sleeping parents in their bedroom. He then ran out of the home and hid in an outbuilding with the shotgun. He subsequently surrendered to police. Defendant's father died from the shotgun blast to his chest and his mother, who previously had suffered several strokes, sustained injuries to her legs. Defendant raised a defense of insanity and three court-appointed psychiatrists examined Defendant and testified at trial. One of the psychiatrists found Defendant to be both insane and mentally ill, the second found that Defendant was neither insane nor mentally ill and the third found that Defendant was sane but did have a personality disorder.

I

Defendant Reed now claims that he is entitled to reversal since one of the jurors in his case had a discussion with another individual regarding this case prior to the time the jury was selected but after the trial court had admonished the prospective jurors not to discuss the case. The other individual allegedly made derogatory remarks about Defendant. Defendant now claims that the juror should have apprised the trial court of the conversation so that measures could have been taken before he was placed on the jury that tried the cause. Defendant's allegations are based primarily on the affidavits and trial testimony of his trial counsel's legal secretary. After Defendant was convicted but before he was sentenced, his counsel commissioned the secretary to call the members of the jury to ascertain their opinions as to an appropiate sentence for Defendant and to generally find out from them what they thought of Defendant's trial. The secretary testified that she was told by one juror that he had been approached by another person who attempted to talk in a derogatory manner

about Defendant while the jury was being selected. The juror told an entirely different story. He testified that on one of the evenings after a day of jury *voir dire*, he had an appointment with a friend but was late due to the trial and, when his friend commented that the jury was being selected in the *Reed* case, the juror said he could not discuss the case and no further mention of the case was made at that time. The juror also testified that sometime after the trial, while at a family dinner, the juror overheard a conversation in which Defendant was mentioned unkindly. The conflict between the secretary's version and the juror's version concerned the telephone conversation between the secretary and the juror. The juror further stated he did not discuss the case with anyone at all during the trial and even had his daughter cut out newspaper articles on the trial so that he would not be improperly influenced.

 The trial court found that there was no irregularity in the conduct of this juror. In reviewing a question such as this, we hold that it is within the discretion of the trial court to determine whether the evidence presented showed any irregularity. *Napoli v. State*, (1983) Ind., 451 N.E.2d 35. In the case of juror irregularity, there must be harm to the defendant. As this Court has observed:

"Misbehavior or irregularity on the part of a juror must—in order to warrant a new trial—be gross and it must be shown to have probably injured the accused."

*Gann v. State*, (1975) 263 Ind. 297, 300, 330 N.E.2d 88, 91, *reh. denied.* In view of the facts presented to the trial judge here, it cannot be said that the trial judge abused his discretion in determining that the evidence presented showed no irregularity meriting the granting of a new trial.

### II

 Defendant's next claim of error is that the State was aware that he was planning to use as one of his defenses a claim that his father severely abused him. Defendant in this appeal now claims that even though the police were aware of this, they did not adequately investigate or search out such evidence. It is Defendant's argument that because the police did not develop this area of the case, it deprived him of exculpatory evidence concerning his defense of child abuse and thus denied him a fair trial. We find no merit to Defendant's contention here. A negligent or intentional withholding or destruction of evidence by the police that would be exculpatory as to Defendant's guilt would be improper conduct and may present grounds for reversal. *Rowan v. State*, (1982) Ind., 431 N.E.2d 805, *reh. denied.* In the instant case, however, Defendant does not point out what witness or evidence, if any, was lost or destroyed or withheld by police by their action or inaction nor does Defendant point to any particular witness that could or should have been produced. The State indicates that Detective Stump testified that he questioned Defendant's mother, brother, sister, the local Welfare Department, the assistant principal of Defendant's high school, his guidance counselor, his doctors and neighbors, in making his investigation. All the information obtained from those witnesses investigated by the police was provided to Defendant in response to his discovery request. Defendant also was granted access to the records of the welfare department and of the high school. We have nothing more than Defendant's speculation that a proper investigation would have produced exculpatory evidence. There is no showing that any evidence was withheld or destroyed by the police here and we accordingly find no grounds for reversal on this issue.

### III

Defendant also claims that newly discovered evidence, to-wit: the testimony of Sondra Kay Mentzer at the hearing on the motion to correct errors, mandated the trial court to grant a new trial. At the trial, Defendant's brother and sisters—Brian, Fawn, and Marlene Reed—testified for the State that neither they nor Defendant were unduly beaten and abused by their father.

At the hearing on the motion to correct errors, Sondra Kay Mentzer testified in contradiction of these witnesses claiming that she had been married to Defendant's brother and had witnessed Defendant's father physically abuse Defendant and that Defendant's mother had related to her that the father beat the children. She also testified that Defendant knew her and had knowledge of the information she had before trial and, in fact, she contacted Defendant's trial attorney's office attempting to inform him of her testimony but never had her calls returned.

The standard of review in determining whether or not newly discovered evidence entitles a defendant to a new trial pursuant to Ind.R.Tr.P. 59(A)(6) has been stated by this Court as follows:

"... to gain such relief the evidence must meet a nine part test:

'(1) [T]hat the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced on a retrial of the case; and (9) that it will probably produce a different result.' *Tungate v. State,* (1958) 238 Ind. 48, 54–55, 147 N.E.2d 232, 235–36.

*Wiles v. State,* (1982) Ind., 437 N.E.2d 35, 39, *reh. denied.*"

*Augustine v. State,* (1984) Ind., 461 N.E.2d 101, 104, *reh. denied.* The burden is, of course, on Defendant to show that his claims of newly discovered evidence meet the above test. The State contends that Defendant has failed to satisfy the test in that he did not use due diligence to discover this evidence well within his knowledge, that it is merely impeaching evidence and that it would not likely produce a different result at trial. We agree. Discovery after trial of information which might have been useful to the defense does not automatically result in a new trial. *Smith v. State,* (1983) Ind., 455 N.E.2d 346.

Mentzer's testimony was at most impeaching evidence. She admitted during her testimony that the children might not have been lying in their testimony but suggested that they might have characterized events differently than she. Furthermore, there was evidence in the case from other witnesses of possible child abuse by Defendant's father. It could not be said, therefore, that Mentzer's testimony would raise a strong presumption that in all probability would result in a different verdict if Defendant's case were retried. The trial court therefore did not abuse its discretion in denying the motion for a new trial.

IV

Defendant also argues on appeal that the evidence adduced during trial is insufficient to establish the victim's cause of death as the prosecution did not negate possible intervening causes for the death. The evidence at trial clearly established that Defendant shot his father with a shotgun. The emergency medical people testified about the injuries suffered by Mr. Reed and that his wound was bleeding profusely. Dr. Frank Houser indicated that the gunshot wound had caused such tremendous loss of blood that the victim died of hypervolemic shock. Other medical testimony was that the victim sustained such loss of blood, both internally and externally, that he died as a result. Defendant now seems to claim that the victim might have lived had there been better and quicker medical attention to stop the bleeding. He therefore claims that the State did not discount the intervening causes of improper medical attention as the cause of death rather than Defendant's acts. There is no merit to this argument, however. When one inflicts injury upon another, he is deemed in the law to be guilty of homicide if the injury contributes mediately or immediately to the death of that other person. *Manna v. State,* (1982) Ind., 440 N.E.2d 473; *Swafford v. State,* (1981) Ind., 421 N.E.2d 596, *reh. denied.* The evidence clearly showed that Defendant's act of shooting his father with a shotgun caused a massive loss of blood which eventually

led to his death. Whether further or different medical assistance might have saved the victim's life is immaterial since Defendant's act placed the victim in mortal danger from which he did, in fact, die. The cause of death was sufficiently demonstrated by the evidence to establish Defendant's responsibility for it beyond a reasonable doubt.

### V

 Defendant next claims the verdicts of the jury in finding him guilty but mentally ill were contrary to the evidence. Defendant interposed the defense of insanity and now claims there was evidence from which the jury could have found that he was not guilty by reason of insanity but there was not sufficient evidence to find him guilty but mentally ill. In argument, Defendant does nothing more than review the testimony of the three psychiatrists. Defendant cites no authority in support of his argument that based on the testimony of these three psychiatrists, the trial court should be ordered to enter judgment of not guilty by reason of insanity and he therefore has waived the issue. Ind.R.App.P. 8.3(A)(7); *McBrady v. State,* (1984) Ind., 459 N.E.2d 719; *Hunt v. State,* (1983) Ind., 455 N.E.2d 307. Dr. Kilgore testified that Defendant was both insane and mentally ill; Dr. Pancner testified Defendant was neither insane nor mentally ill; Dr. Yuhn found that Defendant was sane but also found he may have had an emotional illness based upon his suicide threats. Dr. Yuhn also testified that Defendant had a personality disorder of an anti-social type without psychosis. There is apparent conflict in the testimony of these expert witnesses to be resolved by the jury. The jury's finding that Defendant was guilty but mentally ill was sustained by the evidence and neither the trial court nor this Court has any grounds to change it.

### VI

 Defendant tendered his final instruction No. 3 concerning self-defense. The trial court refused his instruction but gave its own instruction No. 16 which adequately instructed on the subject. There is no error in refusing a tendered instruction when the subject matter is covered by other instructions. *Wininger v. State,* (1983) Ind., 454 N.E.2d 860. Furthermore, the evidence overwhelmingly shows that Defendant shot his father and mother while both of them were sleeping. The evidence therefore did not support the giving of any self-defense instruction and the fact that the trial court did give one is favorable to Defendant. Accordingly, he can show no prejudice in this regard. *Davis v. State,* (1983) Ind., 456 N.E.2d 405. No error is presented on this issue.

### VII

 Defendant was sentenced to a term of forty years for [Count I] Murder and to thirty-five years for [Count II] class A felony attempted murder. The thirty-five year term for attempted murder represented the thirty-year presumptive sentence plus an enhancement of five years. Defendant now claims that the crimes alleged in Counts I and II are inextricably related and that certain mitigating factors set forth in Ind.Code § 35-4.1-4-7(b)(2), (3), (4) and (5) [§ 35-50-1A-7(b)(2), (3), (4) and (5) (Burns 1979)] (Repealed effective September 1, 1983) could have been, and should have been, considered in relation to the sentence imposed by the trial court and that the trial court abused its discretion by failing to do so. Defendant does not indicate, however, what mitigating factors the trial court should have considered but did not. The trial court set out its reasons for imposing the sentence it did pursuant to the above statute and in so doing found that there were no mitigating circumstances. Defendant does not now claim that there were mitigating circumstances that could have, or should have, been considered. He therefore presents nothing for review.

### VIII

 Finally, Defendant notes that Ind. Code § 35-4.1-5-3(c) [actually § 35-50-5A-

3(c) (Burns 1979)] (Repealed effective September 1, 1983) requires that defendants sentenced for murder and class A felonies be confined in a maximum security facility for at least the first two years of their sentence and that this provision would, of course, apply to him. Defendant further points out that at the time of sentencing he was 18 years of age, a white male about 5'2" tall, weighing about 110 pounds, slender build and physically attractive to many inmates who might be expected to be present in a maximum security facility. He therefore claims that having his physical attributes would make him a target for extreme abuse from such inmates and that he would be unable to defend himself from such attacks. His conclusion is that his placement in a maximum security facility would be cruel and unusual punishment for him and violative of the protection guaranteed by the Constitution of the United States and the Constitution of the State of Indiana. The State contends that Defendant waived this argument since he did not make this claim at sentencing even though it was apparent he was aware of the security classification statute referred to. Since he did not raise the question in a timely and proper manner at trial, he may not do so here on appeal. *Carter v. State*, (1983) Ind., 451 N.E.2d 639.

A person convicted of a crime in Indiana has no identifiable right to assignment to a particular institution. *Barnes v. State*, (1982) Ind., 435 N.E.2d 235. The State does have a duty to take reasonable precautions to preserve the life, health, and safety of prisoners, however, Defendant has not presented any evidence that the prison officials would not meet those responsibilities or would be unable to provide Defendant with the protection he claims he requires. It is only his speculation that he would be subjected to abuse and he makes no showing or demonstration that reasonable security measures would be deliberately denied him or that their denial would reasonably be expected. The fact that there is a mere potential for inadequate individual care and security of a prisoner does not present a question of constitutional dimension. *See generally Naked City, Inc., v. State*, (1984) Ind.App., 460 N.E.2d 151. Defendant gives us no facts to support his claim that he would be in the danger he asserts nor does he cite us any authority for his position. We find no error.

Finding no error, we affirm the trial court.

GIVAN, C.J., and PRENTICE, J., concur.

DeBRULER, J., concurs in result.

HUNTER, J., not participating.