Homer MAHAFFEY, Petitioner,

v.

G. Michael BROGLIN, Indiana Attorney General, Respondents.

No. S 85–697.

United States District Court, N.D. Indiana, South Bend Division.

March 28, 1986.

Homer Mahaffey, pro se.

# 1282

William Patrick Glynn, III, Deputy Atty. Gen., Indianapolis, Ind., for respondents.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This petition for writ of habeas corpus was filed pursuant to 28 U.S.C. § 2254 by Homer Mahaffey, an inmate incarcerated at the Westville Correctional Center, in Westville, Indiana. The matter is now before this court on respondents' motion to dismiss, filed as part of their Return to Order to Show Cause. In accord with the dictates of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the complete state court record has been filed with, and carefully examined by, this court.

A careful examination of the underlying state court record and the opinion of the Supreme Court, *Mahaffey v. State,* (Ind. 1984), 459 N.E.2d 380, reveals that petitioner has exhausted his available state court remedies per 28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). Both sides having briefed their respective positions, this petition is now ripe for ruling.

Petitioner was convicted in a state court jury trial of Child Molesting, for which he received a determinate sentence of twenty (20) years. This conviction was unanimously affirmed on appeal by the Supreme Court of Indiana. Petitioner now brings this petition for a federal writ of habeas corpus.

Petitioner raises the following issues in this application for habeas relief:

(1) Error in utilizing doctor's pre-trial report of psychiatric examination in arriving at the sentence.

(2) Denial of the right to the effective assistance of counsel at trial.

## I.

Petitioner claims that the trial court's reference during the sentencing to medical reports, submitted earlier in the case, resulted in an enhancement of his sentence by ten (10) years, and thus, violated his constitutional right against self-incrimination. The facts are not in dispute. Petitioner was charged with child molesting and entered a special plea of insanity. The trial court, pursuant to state statute I.C. § 35-5-2-2, appointed two physicians to evaluate the petitioner. One of the doctors filed his report dated May 12, 1981, prior to the trial which commenced on May 26, 1981, and the other doctor filed his report dated May 28, 1981, after the trial started. Petitioner's special plea of insanity was withdrawn on the date of trial.

Petitioner contends that the state trial court's later use of the doctors' reports at the sentencing was improper and could not be used as a basis for enhancing his sentence, since at the time he made the disclosures he was required to do so by state statute because of his special plea of insanity. The reports filed by the physicians were not used in the trial, nor were the physicians called at trial to testify. The State never offered nor referred to the medical reports of the physicians concerning the petition.

It is the petitioner's contention that his disclosures to the physicians were confidential and protected by the constitutional provisions against compelling criminal defendants to make disclosures which might be used in the criminal prosecution. He cites *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) as supporting authority.

The Supreme Court of Indiana, in its published opinion, fully considered both the state and federal constitutional provisions when affirming the trial court.

Petitioner claims that he should have been warned, prior to or at the time of the examinations, of his *Miranda* rights, particularly that his disclosures could be used against him at the trial or at sentencing. The trial court referred to the physician's statement (in his report to the court concerning petitioner's sanity at the time of the crime) that Mr. Mahaffey is prone to violence. Petitioner would have this court apply the *Estelle v. Smith* reasoning and find the trial court's conduct violated his

Fifth Amendment privilege against self-incrimination, analyzing the facts of this case under the *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) standards.

In *Estelle v. Smith,* the Court determined that Smith's Fifth Amendment privilege was involved when the State used as evidence against Smith the substance of his disclosures during the pretrial psychiatric examination. The State informed the trial court that it would be seeking the death penalty, and the trial court ordered a psychiatric examination of Smith to determine his competency to stand trial pursuant to the Texas Penal Code. Smith submitted to an examination conducted in the jail by the court-appointed psychiatrist which interview took 90 minutes. Dr. Grigson determined that Smith was competent to stand trial. Dr. Grigson was not listed as a witness for either the guilt portion or the penalty portion of the trial. However, the State called Dr. Grigson to testify during the penalty portion of the trial, over the objection of counsel, as to Smith's future dangerousness, and the trial court admitted the testimony. Dr. Grigson was the only State witness during the penalty portion of the trial. The jury responded to the questions concerning the penalty in the affirmative and the trial court was required to sentence Smith to death.

The Supreme Court in *Estelle v. Smith* found that the psychiatrist went beyond reporting to the court on the issue of competence and testified for the prosecution at the penalty phase. The psychiatrist changed his role and became like that of any agent of the State recounting unwarned statements made in a post-arrest custodial interrogation setting. *Id.,* 451 U.S. at 467, 101 S.Ct. at 1875. The Court went on to say that Smith had been given no indication that the compulsory examination would be used to gather evidence necessary to decide whether, if convicted, he should be sentenced to death. He was not informed of his constitutional right to remain silent. *Id.* Particularly important to the facts in this case is the Court's holding in *Estelle v. Smith* at 468, 101 S.Ct. at 1876:

A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding. Because respondent did not voluntarily consent to the pretrial psychiatric examination after being informed of his right to remain silent and the possible use of his statements, the State could not rely on what he said to Dr. Grigson to establish his future dangerousness. If, upon being adequately warned, respondent had indicated that he would not answer Dr. Grigson's questions, the validly ordered competency examination nevertheless could have proceeded upon the condition that the results would be applied solely for that purpose. In such circumstances, the proper conduct and use of competency and sanity examinations are not frustrated, but the State must make its case on future dangerousness in some other way.

"Volunteered statements ... are not barred by the Fifth Amendment," but under *Miranda v. Arizona, supra,* we must conclude that, when faced while in custody with a court-ordered psychiatric inquiry, respondent's statements to Dr. Grigson were not "given freely and voluntarily without any compelling influences" and, as such, could be used as the State did at the penalty phase only if respondent had been apprised of his rights and had knowingly decided to waive them. *Id.* [384 U.S.], at 478, 86 S.Ct., at 1630. These safeguards of the Fifth Amendment privilege were not afforded respondent and, thus, his death sentence cannot stand. (footnote omitted).

■ Justice DeBruler writing for the Supreme Court of Indiana found that petitioner here had initiated the examinations when he entered his special plea of insanity and that petitioner, in doing so, accepted the fact that he would be then subject to psychiatric examination and evaluation for

the purpose of generating evidence admissible in the oncoming trial and useful to the prosecution in defeating his position. *Mahaffey v. State, supra* at 382. The State Supreme Court found the record before it disclosed that petitioner participated fully and freely in those examinations and voluntarily made the disclosures upon which the doctor based the challenged medical report to the court. *Id.* The State Supreme Court's factual findings are entitled to a presumption of correctness under 28 U.S.C. § 2254(d) and *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

Petitioner asserts that since he withdrew his special plea of insanity the day of the trial, the doctor's report submitted for purposes of determining competency should not have been relied upon by the state trial court judge in determining the sentence. It is the petitioner's position that once he withdrew his special plea of insanity the doctors' reports could not be used for any purposes since he was not warned at the time of the examinations that the disclosures could be used against him. He claims he was required by state statute to submit to the examination and that he did not voluntarily and freely submit to the examinations.

■ The key distinguishing factor between this case and the *Estelle v. Smith* is that here petitioner initiated the examination and the State never attempted to use the report in a manner adverse to the petitioner in the trial on the merits. Petitioner entered a special plea of insanity which triggered the state statute requiring the trial court to appoint a psychiatrist to examine and evaluate the petitioner to determine whether he was competent at the time of the alleged acts. Petitioner then freely and voluntarily submitted to the examination making the disclosures to the physicians. In this case, petitioner was the one who initiated the procedure which resulted in producing the evidence which turned out to be helpful to the prosecution. The fact that petitioner withdrew his special plea of insanity on the day of the trial does not affect the manner in which the evidence

was submitted to the court, nor does it change the fact that petitioner freely and voluntarily submitted to the examinations, which in all reality was a request he had made. Petitioner has not shown that there were "compelling influences" which caused him to submit to an examination initiated by someone other than himself. *Estelle v. Smith, supra.*

■ Petitioner has challenged the use of the medical reports as a basis for enhancing his sentence. *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) generally mandates the individualization of punishment as a part of the sentencing process and permits a trial judge, whether in the state court system or the federal court system, a broad range of considerations and discretion in the process. Certainly, convicted defendants have a due process right to a fair sentencing procedure which includes the right to be sentenced on the basis of accurate information. *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *United States ex rel. Welch v. Lane,* 738 F.2d 863 (7th Cir.1984). It is correct that a sentence must be set aside where the defendant can demonstrate that false information forms part of the basis for the sentence. Such a defendant must show that the information before the sentencing court was false and that the court relied on the false information in passing the sentence. *See United States v. Harris,* 558 F.2d 366 (7th Cir.1977). The difficulty of working these problems out in the real judicial world is well and recently illustrated by the trilogy of opinions in *United States v. Rone,* 743 F.2d 1169 (7th Cir. 1984). The majority opinion in *Rone* written by Judge Cudahy appears to be a mixture of due process considerations on the one hand and compliance with Rule 32 of the Federal Rules of Criminal Procedures on the other hand. Here the focus is on the former rather than the latter.

■ However, this court is not faced with the same question which arose in the above line of cases concerning the use of false information. Rather in this case, pe-

titioner does not challenge the medical reports as containing false or disputed information, but challenges the use of the reports as information not properly before the court at the time of sentencing. Petitioner does not contend that he was denied access to the reports, or that he was denied an opportunity to answer the report at sentencing. *United States v. Hendrix,* 752 F.2d 1226 (7th Cir.1985).

At the sentencing hearing the trial court stated the following:

Well, first of all, Mr. Harris, this Court finds no mitigating circumstances in this case. This Court finds that Mr. Mahaffey's use of alcohol is a convenience, something that he has chosen to do over an extended period of time. Pre-sentence report which the Court is considered reflects Mr. Mahaffey's essentially not concerned at all because of what we might say is alcohol problem. Further indicates that he has little or no remorse in connection with this crime and reflects an indifference that is extremely difficult for this Court to understand. The Court further notes that this defendant has a repeated history of criminal activity. The Court also notes from the pre-sentence report and from a medical report previously submitted in this case, that Mr. Mahaffey is prone to violence. Fortunately, his activities didn't get any more violent than they have in this case. Notes also that he has been involved with possession of firearms in the past. Even though these are not necessarily felonies, they clearly show a history of criminal activity and a disposition toward criminal acts.

In deference to your argument concerning the use of alcohol, the best possible thing that could happen to him, to you Mr. Mahaffey, would be institutionalized. You may learn to live without it, I don't know. Prosecution mentioned some of the statutory considerations going to aggravation. I've just recited one, criminal history ....

Dating back to your teens, by your own admission. This Court also finds as an aggravating circumstance that any di-

munition in the sentence here would certainly depreciate the seriousness of the crime and that brings us to what the Court considers the most aggravating circumstance. The crime itself by virtue of what the legislature has labeled it and the penalty it has suggests that may be imposed when this crime occurs indicates its serious nature. The statute specifically mentions victims who are sixty-five or over as Mr. Harris suggested. The opinion of the Court here that the victim here was totally helpless girl of seven years old. And frankly viewing the evidence in this case, its difficult for this Court to comprehend how a man, let alone the father, would so abuse a child. For those reasons, the Court is imposing a sentence of twenty years imprisonment in the proper State institution. The defendant will be given 302 days credit toward this sentence while awaiting trial confined in the Lake County Jail ....

The trial court's reference to the physician's report at the sentencing hearing did not violate the petitioner's Fifth Amendment Privilege against self-incrimination. The medical reports submitted to the trial court were the products of petitioner's special plea of insanity and the information was properly before the trial court at sentencing. The trial court in determining an appropriate punishment, considered all the circumstances of the particular crime and the background of the petitioner, including the medical report put before the trial court by the petitioner. *Williams v. New York, supra.* In this case the state sentencing trial judge stayed well within the record, a critical part of which had been created as a direct result of actions by and on behalf of Homer Mahaffey. The state trial judge in no way transgressed the proper boundaries of due process under Amendment XIV of the Constitution of the United States.

## II.

Petitioner in his second issue raises a claim of denial of effective assistance of trial counsel. The respondents contend

**1286**

that petitioner has failed to raise this issue in the state courts and thus, this petition must be dismissed as a "mixed" petition under *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Petitioner claims that since he raised the issue of trial counsel's effectiveness in his direct appeal, he has exhausted his state remedies. The Supreme Court of Indiana applied the Indiana standard for determining effective assistance of counsel. *Mahaffey v. State, supra,* at 383. The State Supreme Court did not discuss the standards of effective assistance of counsel under the Sixth Amendment as set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ A review of the record does not disclose that the Sixth Amendment issue was ever placed before the Supreme Court of Indiana. However, this court finds that petitioner has exhausted his available state remedies since the Supreme Court of Indiana treats issues not raised on direct appeal waived for purposes of Indiana post-conviction remedy *See, Riner v. Owens,* 764 F.2d 1253 n. 1 (7th Cir.1985); *Williams v. Duckworth,* 724 F.2d 1439, 1441 (7th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 143, 83 L.Ed.2d 82 (1984).

■ This court in determining whether a petitioner's procedural default at the state level bars his litigation of the constitutional claim in the federal forum must apply the "cause and prejudice" standard as set forth in *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) and *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), *reh. denied,* 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977).

■ In this case, petitioner waived his Sixth Amendment effective assistance of counsel claim by failing to raise it in his direct appeal. Petitioner did raise the question of effective assistance of trial counsel but only with regard to the state law standard. He did not raise the Sixth Amendment issue before the Indiana courts. In order for this waived issue to be considered in a federal habeas corpus proceeding, petitioner must show both cause for his noncompliance and actual prejudice

resulting therefrom. *Caccavallo v. Duckworth,* 626 F.Supp. 427, 430 (N.D.Ind.1984), affirmed by unpublished order (Jan. 10, 1986). This court particularly notes the record discloses that petitioner was represented by different counsel on appeal from counsel who represented him during the trial. Petitioner has offered no "cause" for his failure to present the Sixth Amendment issue to the state courts. Since petitioner has failed to establish cause for his failure to raise the competency and effectiveness of trial counsel under the Sixth Amendment in his appeal, he has failed to meet the "cause" prong of *Wainwright v. Sykes* waiver test. Therefore, this court need not consider whether peititioner was prejudiced by the omission. *Engle v. Isaac, supra.*

CONCLUSION

Accordingly, it is the order of this court that respondents' Motion to Dismiss be and hereby GRANTED; writ is hereby DENIED; petition is ordered DISMISSED. SO ORDERED.