Kenneth WOLFE, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8612–CR–1017.

Supreme Court of Indiana.

Nov. 13, 1990.

Richard D. Gilroy, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa Anne McCoy, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of five counts of Attempted Murder, a Class A felony, one count of Carrying a Handgun Without a License, a Class A misdemeanor, and a finding of habitual offender status. He received an aggravated sentence of fifty (50) years for each attempted murder count, one of which terms was enhanced by thirty (30) years by reason of his habitual offender status, and a sentence of one (1) year for the handgun violation, all sentences to be served consecutively.

The facts are: Shortly after 8:00 on the evening of December 10, 1985, Brian Robbins was playing cards at the west-side Indianapolis home of his cousin, Jeff Robbins. Also present at the time were Brian's girlfriend, Sherri Flory; her four-year-old son, Jason; Jeff's girlfriend, Sheri Weaver; and their nine-month-old daughter, Sheena. Feeling the effects of five or six beers and a Quaalude tablet, Jeff went into the back bedroom and lay down on the bed. The women decided to take the children and go Christmas shopping, so Sheri

took her baby and went outside to warm up the car.

Jeff's mother had called earlier to say that appellant had stopped by her home around 2:00 p.m. that day looking for Jeff and had mentioned that he had something for him. When appellant arrived with another man at Jeff's house just after Sheri Weaver went outside, Brian, who recognized him from seeing him with Jeff on three or four prior occasions, admitted him and directed him to the back bedroom to see Jeff, while the other man remained by the door.

Appellant found Jeff on the bed, lying on his stomach, and fired one round from a chrome-plated .357 magnum revolver, striking Jeff in the back of his left shoulder. Jeff looked around at appellant and said, "No, don't shoot me again, man, what are you doing?" Appellant replied, "This ain't no nightmare, this is for real," and shot him through the jaw.

When Brian and Sherri Flory heard the first shot, they looked at appellant's companion, who lifted the flaps of his jacket pockets to reveal the butts of two pistols. After the second shot, appellant came back into the living room and walked toward Brian, who implored, "Kenny, oh Kenny, please don't shoot." Appellant looked at him, smiled, and shot him three times, once in the arm and twice in the chest. Brian collapsed to the floor, and appellant turned his attention to Sherri, who begged him not to shoot her little boy. Appellant laughed and shot her in the face; he then shot Jason in the neck. Upon leaving the house, appellant encountered Sheri Weaver and pistol-whipped her about the head, beating her face to a pulp in the process, and left her unconscious on the ground next to her screaming infant.

About 10:30 that same night, appellant went to the Beehive Tavern, where he was a regular customer, and after paying ten dollars for a three-dollar drink asked the bartender to say, should anyone ask, that appellant had been at the tavern all evening. The bartender also testified that three nights before, appellant had tried to sell him a chrome-plated .357 magnum revolver. Paul Ray, who had known appellant since 1972 or 1973, testified he had gone with appellant to the Beehive around 7:30 that evening, but that appellant left while he was in the restroom. He saw appellant at the Beehive again that evening around 10:30. Appellant then told Ray he would be reading about something in the headlines and asked him if he would say that appellant had been with him all evening; Ray said no.

All of the victims survived their wounds. Sherri Flory and Brian and Jeff Robbins individually were shown photographic arrays from which they identified appellant as their assailant. Gerald Vandever testified he was incarcerated with appellant in the lockup behind Marion County Municipal Courtroom VI on January 27, 1986, and after recognizing him asked why he had shot the boy. Appellant replied that such things happen when people get in the way and indicated that he had been "collecting" a debt owed him for drugs. Vandever also testified that appellant showed him a handcuff key concealed in his mouth and asked him for help in escaping because he needed to finish killing his victims so they could not testify against him in court.

Appellant contends the evidence was insufficient to support his attempted murder convictions. He argues the in-court identifications of him as the perpetrator by Brian and Jeff Robbins, Sherri Flory and the Beehive Tavern bartender, which he sought to exclude at trial, were tainted by the use of impermissibly suggestive pretrial photographic arrays. He contends they were defective because he was the only bald person depicted and because the bartender was shown only two photos to identify.

Appellant correctly cites cases holding that a reviewing court looks to the totality of the circumstances to determine whether the array was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification, *e.g.*, *Smith v. State* (1986), Ind., 490 N.E.2d 748. Regardless of suggestiveness, however, an in-court identification need not be suppressed if the totality of the circumstances shows the witness had a basis for identifi-

cation independent of the contested photographic array. *Allen v. State* (1982), Ind., 439 N.E.2d 615.

In the case at bar, each witness had a firm independent basis for identifying appellant as the perpetrator. Jeff Robbins had known him since early 1985 and they had gotten together about three times a week to drink and play cards. Brian Robbins had met appellant at least three times and had been to his home. Sherri Flory had met appellant at Jeff's mother's home a month or two before the crime. The Beehive Tavern bartender knew appellant as a regular customer named "Kenny" who usually ordered a Black Russian. There clearly was sufficient independent basis to admit the identification testimony of these witnesses.

Moreover, an examination of the record reveals that the use of the photographic arrays in question was not impermissibly suggestive. We held in *Neal v. State* (1988), Ind., 522 N.E.2d 912 that where the individuals depicted in the array varied in appearance (some were bald, some had moustaches, some had beards), the array was not unusual nor impermissibly suggestive. *See also Henson v. State* (1984), Ind., 467 N.E.2d 750. The six-photograph array shown to the victim/witnesses in the instant case similarly was not defective. The two-photograph "array" shown to the bartender was not a lineup used for purposes of identification; rather, police were trying to find out whether appellant had been at the Beehive Tavern in the process of tracing his whereabouts on the night of the crime. Because the two photographs were not used for eyewitness identification of appellant as the perpetrator, such use of only two photographs was entirely proper. *Id.* The evidence of appellant's identity as the perpetrator was properly admitted and was sufficient to prove he was the person who committed the crimes.

Appellant also maintains the jury's verdict is unsupported because it fails to take into consideration the pound or so of marijuana and the firearms found in the victim's home, that the physical injuries and drugs allegedly taken by the victims rendered their identification of appellant inherently unreliable, and that the testimony of appellant's fellow jail inmate, Gerald Vandever, was "obviously false" because he was hoping to benefit from his testimony, which was not corroborated by other inmates.

On sufficiency review, this Court will look only to the evidence supporting the jury's verdict and all reasonable inferences to be drawn therefrom; we will not weigh conflicting evidence nor judge the credibility of the witnesses. *Collins v. State* (1982), Ind., 431 N.E.2d 802. The foregoing claims by appellant involve matters which in fact were placed before the jury and which go to the weight of the evidence and the credibility of the witnesses, which lie within the exclusive province of the jury. *Burton v. State* (1986), Ind., 497 N.E.2d 535. There clearly exists sufficient evidence of probative value for the jury to find that appellant was the person who attempted to murder the five victims.

Appellant contends his total sentence of 281 years is manifestly unreasonable, arguing its excessive length renders it cruel and unusual punishment in violation of the United States Constitution's Eighth Amendment and art. I, § 16 of the Indiana Constitution. He acknowledges the trial court has wide discretion in passing sentence and that as long as a sentence is authorized by statute, we will not revise it unless it is manifestly unreasonable in light of the nature of the offense and the character of the offender such that no reasonable person could find such sentence appropriate to the particular offense and offender. Ind.R.App.Rev.Sen. 2; see, now, Ind.Appellate Rule 17(B).

Appellant cites *Fointno v. State* (1986), Ind., 487 N.E.2d 140 where we reduced a sentence from 104 years to 80 years in light of the defendant's lack of prior criminal history, the fact he had not brutalized his victims, and the reduced significance of the confinement and robbery convictions which had been sentenced consecutively to the enhanced rape and criminal deviate con-

duct counts. He maintains his sentence similarly should be reduced in light of the fact that he was employed at the time of the offense, that he had been abused and neglected as a child, and that he had a drug problem and was intoxicated on the day of the instant crimes.

However, none of the factors held to be in mitigation in *Fointno* are present here. The execution of the instant crimes, as related above, demonstrates the utmost brutality; each of the victims suffered some degree of permanent physical and emotional damage; and appellant evidently was untroubled by the idea of attempting four additional murders, one of a four-year-old boy, to cover up one murder attempted to remedy a lack of payment for drugs. The trial court, noting at sentencing that appellant laughed and winked at the victims as they testified at trial, went on to detail appellant's extensive criminal history including several felony convictions, one for a homicide, and his pronounced unresponsiveness to rehabilitation. The court pointed out that appellant sought to escape incarceration not to avoid prosecution but to finish killing the witnesses against him. The court found a "very, very substantial risk" that appellant would commit other crimes, and rendered the maximum consecutive sentences to ensure that appellant would not come back into society.

In view of the nature of the offenses and of appellant's character, we do not find the 281–year sentence to be manifestly unreasonable.

■ Appellant contends the trial court erred in allowing the State to argue at sentencing from pretrial psychiatric reports ordered to determine appellant's competency to stand trial. Prior to trial, appellant's counsel filed a suggestion of incompetency. The court appointed two psychiatrists to examine appellant and on May 28, 1986 heard evidence from the doctors regarding both appellant's competency to stand trial and his sanity on the day of the crimes. The defense objected to any evidence regarding the latter, which objection was overruled. Appellant never interposed an insanity defense, and neither he nor the doctors testified during the trial itself.

At sentencing, the State sought in its argument to refer to remarks made by appellant during his pretrial psychiatric examination. Appellant objected on the Fifth and Sixth Amendment grounds of self-incrimination and violation of his right to counsel. The trial court, noting he already had the doctor's report in front of him, overruled the objection. Appellant argues this ruling was error, citing *Buchanan v. Kentucky* (1987), 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 and *Estelle v. Smith* (1981), 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359.

In *Estelle,* the introduction before the jury at the death penalty phase of the psychiatrist's expert opinion drawn from a pretrial interview was held to violate the defendant's Fifth and Sixth Amendment rights. In *Buchanan,* where such evidence was used at trial in rebuttal to a "mental status" defense, it was held there was no Fifth Amendment violation where no remarks of the defendant concerning the crime at bar were included, and no Sixth Amendment violation where defense counsel had joined in the motion for a competency examination. Though they cut in both directions, both *Estelle* and *Buchanan* are distinguishable from the instant case, where the information was submitted to the court alone in a non-capital sentencing hearing. Here, the trial court already had heard the information at the competency hearing and had the doctor's report before him at the sentencing hearing.

In *Mahaffey v. Broglin* (N.D.Ind.1986), 630 F.Supp. 1280, it was held the trial court was not precluded from relying on such reports at sentencing where the defendant had voluntarily submitted to the examination. Here, while appellant maintains he objected to the scope of the psychiatric report extending beyond competency into his sanity at the time of the crime, he fails to show that the State argued from portions of the report reflecting this broader scope, or that the trial court relied upon such portions of the report in rendering sentence. The record reveals the prosecu-

tor argued from the doctor's report only that appellant had some understanding that his drug abuse had led him to commit prior burglaries, that he always felt good when using drugs, and that he would continue to use them whenever he could. Counsel for appellant in his own remarks at sentencing argued appellant's drug abuse as a mitigating factor. We find no prejudice to appellant from the State's reference to the doctor's report. Absent a showing of prejudice, no reversible error is demonstrated. *Sharp v. State* (1989), Ind., 534 N.E.2d 708, *cert. denied*, —— U.S. ——, 110 S.Ct. 1481, 108 L.Ed.2d 617.

As we stated in *Lang v. State* (1984), Ind., 461 N.E.2d 1110, 1114:

"In setting a particular sentence, the trial court must consider all the circumstances of the particular crime and the background of the individual offender and may rely upon relevant information which was not admissible at trial. The defendant retains the right to refute any inaccurate or improper information."

Here, the record shows appellant indicated through his counsel that he did not make any such remarks regarding his drug use to the court-appointed psychiatrist. We further note that our statute, Ind.Code § 35–38–1–9(c), and our cases, *e.g., Lang, supra*, countenance the inclusion in the presentence report of any matter deemed relevant to the question of sentence, and that a trial court has discretion to order a mental examination of a defendant prior to sentencing. Ind.Code § 35–38–1–10; *Wray v. State* (1989), Ind., 547 N.E.2d 1062.

We find no violation of appellant's Fifth or Sixth Amendment rights and no impropriety in the consideration at sentencing of his pretrial psychiatric interview results.

■ Appellant contends the trial court erred in admitting into evidence State's Exhibit No. 2–G, a photographic slide depicting facial injuries resulting from the pistol-whipping inflicted by appellant upon Sheri Weaver. He acknowledges its admission fell within the sound discretion of the trial court and will not be reversed absent a showing of abuse, citing *Douglas v. State* (1984), Ind., 464 N.E.2d 318. He none-theless argues the prejudicial impact of its grotesqueness outweighed its probative value of illustrating the physical damage done to Sheri Weaver's face. He maintains such damage was demonstrated amply by reference to State's Exhibit No. 2–H, a life-sized model of a human skull.

Exhibit 2–G was introduced during the testimony of Dr. James Denneny, a head and neck specialist, who testified as to the nature and extent of Sheri Weaver's head wounds, particularly around her left eye. He testified, *inter alia*, that portions of the bony rim around the eye socket had been beaten completely away and described the reconstructive procedures employed to rebuild that area, using the model skull to illustrate. Dr. Denneny also described the soft-tissue injuries to that same region of the victim's head and the reconstructive procedures he used to restore the brow, cheek and eyelid as best he could over a period of months. Exhibit 2–G depicted the area of the victim's left eye as it appeared three and a half months after the injury. As demonstrative exhibits go, we see nothing particularly gruesome about this one. Dr. Denneny testified it would be helpful in illustrating the injuries inflicted on the area depicted, and the trial court admitted it for that limited purpose.

Appellant urges us to examine Exhibit 2–G in light of State's Exhibits Nos. 2–A through 2–H in order "to properly appreciate the impact and cumulative effect that all the photographs had on the jury to inflame their minds," and that 2–G was cumulative and unnecessary. An examination reveals, however, that none of the other exhibits depicts the same area of injury to Sheri Weaver as does 2–G. Because it depicted a different aspect of her injuries and was illustrative of the witness's testimony, its admission was not an abuse of discretion. *Montano v. State* (1984), Ind., 468 N.E.2d 1042. Because it has not been shown to have been more prejudicial than probative, the admission of State's Exhibit No. 2–G was not error.

■ Appellant contends the trial court erred in denying his motion for mistrial made after a probation officer inadvertent-

ly walked through the jury room on her way to another courtroom. He argues that harm is presumed from an irregularity such as this extrajudicial contact with the jurors and his conviction thus should be reversed, citing *Conrad v. Tomlinson* (1972), 258 Ind. 115, 279 N.E.2d 546 and other cases. The cases go on to say, however, that if an explanation for the alleged misconduct shows the defendant was not harmed, the presumption of prejudice is rebutted and no mistrial is warranted. *Id.; Currin v. State* (1986), Ind., 497 N.E.2d 1045; *Reed v. State* (1985), Ind., 479 N.E.2d 1248.

Here, the trial court held a hearing where the probation officer testified that as she approached the jury room, the door was open and people were milling about drinking coffee and looking out the window. Not realizing it was a jury, she walked through the room without talking with anyone and exited through a rear door into a hallway, where she saw defense counsel standing next to a holding cell. The jury then was questioned whether anyone had heard or seen anything as the probation officer exited the rear door; all jurors responded in the negative and were admonished to disregard the event.

We see nothing about this incident rising to the level of gross misbehavior or irregularity, nor any showing of harm to appellant, such as is required to grant a new trial. *Id.* The probation officer's detour through the jury room seems rather to constitute a non-event. Appellant's motion for mistrial was properly denied.

■ Appellant contends the trial court erred in improperly limiting his cross-examination of State's witness Gerald Vandever, who testified as to appellant's remarks concerning his reasons for committing the crimes and for wanting to escape. Defense counsel on cross-examination went into Vandever's background as a police informant and attempted to elicit the range of potential sentences the witness had faced in certain plea bargains related to his services as an informant. The trial court sustained the State's objection when defense counsel attempted to bring out the maxi-

mum sentences Vandever had faced at the time of his plea bargains. Appellant argues this ruling improperly hampered his ability to explore any benefit the witness might have earned by his testimony and the resultant likelihood of prejudice on the part of the witness. He cites *Jarrett v. State* (1986), Ind., 498 N.E.2d 967 as well as other authority for his right to inquire into the potential benefit received and thus the motivation when a witness agrees to testify for the State.

However, the case at bar is distinguishable from those cited by appellant. Vandever was not charged in the instant case nor was his testimony here part of any plea bargain in any other case. He gave as his motivation for testifying his empathy for the four-year-old victim derived from having a son of his own as well as a hope for leniency in the future. This Court has held it is not an abuse of discretion for a trial court to so limit cross-examination of a State's witness where his testimony was not part of any plea bargain and the jury was apprised of the circumstances surrounding the testimony. *Fassoth v. State* (1988), Ind., 525 N.E.2d 318. It was not error here to sustain the State's objection in this regard.

■ Appellant contends the trial court erred in allowing over his objection the exhibition to the jury of the by-then six-year-old victim, Jason Flory, to illustrate the testimony of his mother, Sherri Flory, regarding the extent of Jason's disabilities resulting from the gunshot wound to his neck. Appellant maintains the display of Jason's scars to the jury was so inflammatory that its prejudicial impact outweighed its probative value and thus it should not have been allowed, citing *Yurina v. State* (1985), Ind., 474 N.E.2d 93.

■ We disagree. Had Jason been a few years older, he clearly would have been allowed to testify himself and point out his scars to the jury as did the adult victims herein. Moreover, Dr. Dennis Vane, a pediatric surgeon who had treated Jason, testified as to the extent of his wounds, their treatment and the permanent damage Jason could expect to experience.

To illustrate Dr. Vane's testimony, slides depicting Jason's wound were admitted without objection. Even the erroneous admission of evidence which is cumulative of other evidence admitted without objection does not constitute reversible error. *McCovens v. State* (1989), Ind., 539 N.E.2d 26. Here, the jury's viewing of Jason himself was merely cumulative of the slides accompanying Dr. Vane's testimony. The display of Jason's wound thus did not constitute error.

 Appellant contends the trial court erred during the habitual offender phase of his trial in submitting to the jury over his objection a special verdict form, which listed each of the three prior felonies alleged with blanks for the jury to specify whether the State "has/has not" proved each prior felony listed, and at the bottom provided two blanks for them to indicate whether they found that appellant "has/has not" accumulated two or more prior unrelated felonies and "is/is not" a habitual offender. Appellant argues there is more to a habitual offender determination than merely finding two prior unrelated felony convictions and, attempting to equate our recidivist determination procedure with the court's balancing of aggravating and mitigating circumstances at sentencing as per Ind.Code § 35-38-1-3, maintains the special verdict form improperly removed the jury's discretion and kept them from delving into matters other than proof of the prior felony convictions.

Appellant's contention is without merit. Any balancing of aggravating and mitigating factors comes into play when the court decides the sentence to be imposed as per Ind.Code § 35-50-2-8(g). "Where statutes provide that mitigating circumstances may be considered in determining the length of a sentence to be imposed, it is within the absolute discretion of the trial court whether to make findings concerning such potential mitigating factors. This principle applies to the presumptive sentence as to an habitual offender status." *Elliott v. State* (1989), Ind., 541 N.E.2d 942, 944. Thus any discretion to be exercised is for the court alone at sentencing; it is not for the jury in making the habitual offender determination.

Moreover, we have held that special verdict forms such as the one used here are preferable to a general verdict, whenever more than two prior felonies are alleged, to enable a reviewing court to discern which two of the prior felonies the jury found. *Boarman v. State* (1987), Ind., 509 N.E.2d 177. We also have held that special verdict forms do not impede but rather facilitate the jury's finding of whether the defendant has accumulated two prior unrelated felonies. *Davenport v. State* (1989), Ind., 536 N.E.2d 263. Use of the special verdict form was entirely proper.

The trial court is affirmed.

SHEPARD, C.J., DeBRULER, PIVARNIK and DICKSON, JJ., concur.