DeJong JONES, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 42A05–0005–CR–181.

Court of Appeals of Indiana.

May 9, 2001.

Transfer Denied August 9, 2001.

Susan K. Carpenter, Public Defender of Indiana, Lorraine L. Rodts, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Following a jury trial, appellant DeJong Jones was convicted of two counts of Robbery[1] as a Class B felony. Jones raises three issues upon appeal, which we restate as follows:

(1) whether the trial court erred by limiting Jones's cross-examination of his accomplice regarding his plea agreement with the State;

(2) whether the trial court erred by allowing in-court identifications of Jones; and

(3) whether the trial court erred by refusing to give Jones's tendered jury instruction regarding eyewitness identification testimony.

We affirm in part and reverse in part.

The record reveals that on August 4, 1999, Sherdil Khan was working at the Best Western Motel in Vincennes, Indiana. At approximately one o'clock in the morning, Jones entered the motel and inquired about the cost to rent a room. Khan informed Jones that the motel had no vacant rooms and suggested he look for a room at another nearby motel. Jones, however, remained in the motel lobby. Khan then noticed another man standing by the entrance door. This other man, later identified as Roy Winters, asked Khan if he could use the motel's telephone directory. As Khan bent down to retrieve the directory, one of the men hit him in the head with a rock. Although he could not see anything immediately after being struck, Khan regained his composure. Both Jones and Winters then began to hit Khan, who escaped the lobby and ran to the motel manager's room. The police were called to the motel, and discovered that approximately $160 had been taken

---

1. Ind.Code § 35–42–5–1 (Burns Code Ed.    Repl.1998).

from the motel's cash drawer. As a result of being struck in the head with the rock, Khan was taken to the hospital and required stitches.

Three days later, on August 7, 1999, between three and four o'clock in the morning, Harry Patel, the manager of the same Best Western Motel, heard the sound of breaking glass coming from the lobby. When Patel went to see what had caused the sound, he saw Jones attempting to take money from the cash drawer. Patel attempted to stop Jones, but Jones punched him in the eye and fled with anywhere from $30 to $40 in cash. Patel too required hospital treatment for his injuries.

On August 8, 1999, the owner of Doll's Motel asked Knox County Police Officer Steve Luce to assist in removing the property of certain individuals who had been "removed" from the motel. While in the room, Luce seized three photographs. One of the photographs was of two black males and two white females, the other of a black male, and the last of a black male and a black female. These photographs were shown to Chief Deputy Michael Morris of the Knox County Police Department. After discussing the situation with the prosecutor, Deputy Morris presented the three photographs to Patel, who identified the photograph of the lone black male as the robber. Further investigation by the police revealed that this photograph was of DeJong Jones.

The police arrested Jones in Sullivan County and immediately transported him back to the Best Western Motel, where both Khan and Patel identified Jones as the robber. Before identifying Jones at the motel, Khan also identified Jones as the robber from the photograph of Jones taken from Doll's Motel.[2]

According to Deputy Morris, on August 9, 1999, both Khan and Patel identified Jones by viewing a six-photo lineup. However, in his deposition, Khan testified that he only identified Winters from the six-person photo lineup, and Patel testified that he could not remember viewing the photo lineup at all.

Before trial, Jones moved to suppress any evidence of the out-of-court identifications and any in-court identifications, claiming the witnesses were tainted by improperly suggestive police procedures. The trial court granted Jones's motion to suppress the pre-trial identifications, but denied the motion to suppress any in-court identifications.

At trial, the State asked both Khan and Patel if the man who robbed them was in the courtroom. Over Jones's objection, both witnesses identified Jones. Roy Winters, Jones's accomplice in the first robbery, also testified against Jones.

## I.

### Cross–Examination Regarding Plea Agreement

Jones first claims that the trial court erred by not allowing him to fully cross-examine his accomplice, Roy Winters, regarding the plea agreement between Winters and the State whereby Winters received a six-year sentence in a work-release program. Trial courts have wide discretion to determine the scope of cross-examination, and we will reverse only for a clear abuse of that discretion. *Nasser v. State*, 646 N.E.2d 673, 681 (Ind.

---

**2.** Upon appeal, Jones claims that Khan was shown only the photograph of Jones. However, Deputy Morris testified at the suppression hearing that he remembered Khan looking at all three photographs. Khan's deposition is not entirely clear on the matter, but does suggest he was shown only the photograph of Jones.

Ct.App.1995). A trial court abuses its discretion in controlling the scope of cross-examination when the restriction relates to a matter which substantially affects the defendant's rights. *Id.*

At trial, Jones asked Winters if he knew the possible sentence for a Class B felony. The State immediately objected, and the trial court sustained the objection. Thereafter, Jones asked Winters if he remembered being informed of the possible penalty for a Class B felony during plea negotiations. Again, the State objected. The trial court did not make an immediate ruling on this objection. However, as Jones inquired further about this subject, the trial court asked Jones's counsel to approach the bench. Although the content of any discussion between Jones's counsel and the trial court was not transcribed, after this, Jones's counsel changed his line of questioning. The jury was never informed of the penalty Winters could have received.

Upon appeal, Jones claims that because he was unable to present to the jury the full extent of the benefit Winters received as a result of the plea bargain, he was denied his Sixth Amendment right to confront witnesses against him. *See Standifer v. State,* 718 N.E.2d 1107, 1109–10 (Ind. 1999); *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). This right is secured for defendants in state criminal proceedings through the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

The Indiana Supreme Court has held that any beneficial agreement between an accomplice and the State must be revealed to the jury. *Morrison v. State,* 686 N.E.2d 817, 818 (Ind.1997); *Morgan v. State,* 275 Ind. 666, 419 N.E.2d 964 (1981); *Newman v. State,* 263 Ind. 569, 334 N.E.2d 684 (1975). "This rule serves to help the jury better assess the reliability and honesty of the felon-witness." *Morrison,* 686 N.E.2d at 819. It is insufficient that the mere existence of a beneficial plea agreement be revealed to the jury; the *extent* of the benefit offered to a witness is relevant to the jury's determination of the weight and credibility of that witness's testimony. *Standifer,* 718 N.E.2d at 1110.

Here, the State maintains that the trial court's limitation of the cross-examination of Winters was entirely proper. Winters and Jones were both charged with robbery. Therefore, the State claims that had the jury been informed of the penalty Winters would have faced had he not pleaded guilty, it would also have been informed about the potential sentence Jones faced—a matter not properly before the jury. *See Coy v. State,* 720 N.E.2d 370, 374 (Ind. 1999).

This same argument was presented to our Supreme Court in *Jarrett v. State,* 498 N.E.2d 967 (Ind.1986). In *Jarrett,* two of the defendant's accomplices agreed to testify against him in exchange for being allowed to plea to a lesser offense. When the defendant in *Jarrett* questioned the accomplice witnesses regarding the potential penalties they would have faced had they not agreed to testify, the trial court sustained the State's objections. The *Jarrett* court stated:

> While sentencing information may not be relevant to the jury's duty in a criminal case, we do not perceive it to present a substantial risk of prejudice to the State. To the contrary, however, significant harm results when the jury is prevented from learning the extent of benefit received by a witness in exchange for his testimony. It would be obviously relevant and proper for a jury to consider the amount of compensation a witness expects to receive for his testimony. It is equally proper for this jury to know

the quantity of benefit to accusing witnesses. It is quite relevant whether they are thereby avoiding imprisonment of ten days, ten weeks, or ten years. *Id.* at 968. The *Jarrett* court further stated, "Against the crucial role of full and proper cross-examination, *the State's desire to censor sentencing information is clearly subordinate." Id.* at 968–69 (emphasis supplied).

The extensive nature of a defendant's right to fully cross-examine a witness who has received the benefit of a plea agreement was further explored in *Sigler v. State,* 733 N.E.2d 509 (Ind.Ct.App.2000), *reh'g denied, trans. denied.* In *Sigler,* the trial court sustained the State's objections to the defendant questioning his accomplices regarding the precise terms of their plea agreement with the State, including the specific number of years of imprisonment that they could have received had they not agreed to testify. Faced with this situation, the defense counsel in *Sigler* agreed to refer to the sentence reductions in terms of percentages rather than specific years. The *Sigler* court held that this was insufficient to preserve the defendant's right to fully cross-examine the accomplice witnesses. *Id.* at 511–12.

▆▆▆ Here, the trial court abused its discretion when it sustained the State's objections to Jones questioning Winters regarding his potential sentence. Nevertheless, we will not reverse Jones's conviction if the State can demonstrate beyond a reasonable doubt that the error complained of did not contribute to the verdict. *Sigler,* 733 N.E.2d at 511. Whether the trial court's error was harmless depends upon several factors including the importance of the witness's testimony in the State's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material

points, the extent of cross-examination otherwise permitted, and the overall strength of the State's case. *Standifer,* 718 N.E.2d at 1111 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

In the present case, Winters' testimony was not merely cumulative. Winters was the only witness who testified that he saw Jones strike Khan in the head with a rock. Winters was also the only witness who testified that Jones took the money from the cash register. In addition, Winters testified that Jones told him that he was going to the motel to get some money. As Winters was the only witness who testified to the above facts, his testimony was important to the State's case. The importance of Winters' testimony was emphasized by the State when it argued in opposition to Jones's motion in limine to suppress Winters' testimony. The prosecuting attorney said, "[Winters' testimony] is newly discovered . . . and I think essential to the State's case . . . as we had most of our identification evidence suppressed, I mean I got to have it." Record at 290–91.

Furthermore, although much of Winters' testimony was corroborated by Khan, some of it seemed to conflict with Khan's testimony. Khan testified that, although he could not see who hit him in the head, he believed it was Winters, as he saw nothing in Jones's hands. Winters' testimony also contradicted portions of his deposition testimony in which he claimed that he did not see Jones take the money from the cash register.

▆▆▆ Jones was allowed to cross-examine Winters regarding these contradictions. Jones also cross-examined Winters regarding his plea agreement with the State, and the jury was aware that Winters had cut a favorable deal in return for his testimony.

Although the jury could certainly have assumed that Winters was facing a more severe penalty had he not testified, "there is no sufficient alternative to allowing a criminal defendant to question a felon-witness regarding the specific number of years of imprisonment he or she has avoided by agreement with the State." *Sigler,* 733 N.E.2d at 512.

The State did not entirely rely upon Winters' testimony; Khan also testified that Jones and Winters robbed the motel. Although Winters was impeached by Jones's cross-examination, his testimony might have been less credible had the jury known the full extent of his agreement with the State. As charged, Winters faced a sentence of up to twenty years,[3] but in exchange for testifying, he received a six-year sentence in a work release program.

█ Considering these factors, we cannot say that the State has demonstrated beyond a reasonable doubt that the trial court's error did not contribute to the verdict, and Jones's conviction upon the charge of robbing the motel on August 4, 1999, must be reversed. We further note that although double jeopardy bars retrial when a conviction is reversed due to insufficient evidence, it does not bar retrial when a conviction is reversed due to trial error. *Sigler,* 733 N.E.2d at 512.

## II.

### In–Court Identification Testimony

█ The trial court suppressed the State's evidence regarding the pre-trial identifications of Jones made by Khan and Patel because of impermissibly suggestive procedures used by the police. However, over Jones's objections, the trial court permitted both Khan and Patel to identify Jones during trial. Upon appeal, the State does not deny that the pre-trial identifications of Jones were improper but instead argues that there was an independent basis for the in-court identifications. A witness who participates in an improper pre-trial identification procedure may identify the accused in court if the totality of the circumstances clearly and convincingly shows that the witness has a basis for the in-court identification independent of the pre-trial identification. *Young v. State,* 700 N.E.2d 1143, 1146 (Ind.1998).

█ Although not an exhaustive list, the factors to be considered in determining whether an independent basis exists include: (1) the amount of time the witness was in the presence of the perpetrator; (2) the distance between the witness and the perpetrator; (3) the lighting conditions at the time; (4) the witness's degree of attention to the perpetrator; (5) the witness's capacity for observation; (6) the witness's opportunity to perceive particular characteristics of the perpetrator; (7) the accuracy of any prior description of the perpetrator by the witness; (8) the witness's level of certainty at the pre-trial identification; and (9) the length of time between the crime and the identification. *Id.* at 1146.

### A.

### Patel's In–Court Identification

█ Harry Patel testified that with regard to the August 7 incident, he observed Jones in a well-lit lobby rummaging through the motel's cash register. Patel further stated that he got a "good view" of Jones and was close enough to be punched by him. Supp. Record at 25. Patel testified that his encounter with Jones lasted anywhere from under three minutes to up to four minutes. There is also no indication that Patel did not have the capacity to observe his attacker.

3. *See* Ind.Code § 35–50–2–5 (Burns Code Ed. Repl.1998).

Jones argues that scientific studies have demonstrated that a witness's estimation of the duration of events are usually overstated, especially where the witness was under stress or anxiety. Gary L. Wells & Donna M. Murray, *What Can Psychology Say About the Neil v. Biggers Criteria for Judging Eyewitness Accuracy?*, 68 J. Applied Phsychol. 347, 353–54 (1983); see also Elizabeth F. Loftus & James M. Doyle, Eyewitness Testimony: Civil and Criminal (3d ed.1997). Studies have also shown that witnesses subject to violence are less accurate in identification. Brian R. Clifford & Clive R. Hollin, *Effects of the Type of Incident and the Number of Perpetrators on Eyewitness Memory*, 66 J. Applied Psychol. 364 (1981).

■ Be that as it may, given conditions more violent than those experienced by Patel, Indiana courts have repeatedly held that a witness possessed an independent basis for an in-court identification. *See Flowers v. State*, 738 N.E.2d 1051, 1056 (Ind.2000) (independent basis for in-court identification where rape victim saw attacker for a few minutes in a bedroom lit only by a television set), *reh'g denied; Logan v. State*, 729 N.E.2d 125, 132 (Ind. 2000) (independent basis for in-court identification where witness saw defendant shoot her companion in a darkened hallway and then pointed gun at her). The violence of an encounter may well be a factor to consider in determining the accuracy of identification. However, we cannot say that a victim of a violent crime cannot possess an independent basis for an in-court identification. Even if we assume that Patel's estimation of the duration of his encounter with Jones was somewhat exaggerated, he still had an adequate opportunity to observe Jones.

Nor was Patel's description of Jones inaccurate. Both Deputy Morris and Knox County Police Officer Robert Hart testified that Patel described the robber as an approximately six-foot tall black male with a muscular build, short hair, and no facial hair. Jones argues that Patel's description became more accurate and detailed only after his exposure to the pretrial identification procedures. However, Patel's description remained substantially identical. During deposition, Patel described Jones as an approximately six-foot tall black male with a muscular build, a bald head, and no facial hair. At trial, Patel gave the same description.

Furthermore, there is no indication that Patel was ever equivocal in his identification of Jones.[4] In view of the totality of the circumstances, we conclude that Patel had an independent basis upon which to identify Jones in court.

### B.

### *Khan's In–Court Identification*

■ Although we have reversed Jones's conviction upon the charge of robbing the motel on August 4, 1999, retrial upon this charge is possible. Therefore,

---

**4.** We acknowledge that there is scientific evidence supporting Jones's contention that an eyewitness's confidence in an identification is a poor indication of the accuracy of that identification. *See* Wells & Murray, *supra* at 349–52. However, we are not at liberty to ignore the precedent of our Supreme Court, which has recently listed eyewitness certainty at the pre-trial identification as a factor to consider when determining whether the witness has an independent basis to make an in-court identification. *See Hardiman v. State*, 726 N.E.2d 1201, 1205 (Ind.2000) and *Young*, 700 N.E.2d at 1146; *but see Logan*, 729 N.E.2d at 132 and *Flowers*, 738 N.E.2d at 1056 (both not listing a witness's level of certainty at the pretrial identification as one of the factors to be considered). Moreover, even were we not to consider Patel's level of certainty during the pre-trial identifications, we would still conclude that he had an independent basis upon which to identify Jones during trial.

we will also address Jones's argument that the trial court erred in allowing Khan to identify him at trial. Khan testified that he and Jones spoke one-on-one for approximately two to five minutes in a well-lit motel lobby. Jones admits that Khan had an opportunity to view Jones for a sufficient period of time in good lighting. However, Jones argues that the violence of Khan's encounter with Jones weighs against a finding that there was an independent basis for an in-court identification.

It is true that Khan testified that, after he had been struck in the head with a rock, he was "panicked and nervous" and that he "blacked out for a while." Supp. Record at 41. However, much of Khan's encounter with Jones took place under the non-stressful conditions of speaking with a prospective customer, during which Khan had an adequate opportunity to observe Jones. Furthermore, Khan testified that he had 20/20 vision and got a good view of both of his assailants. Khan was also able to describe Jones's height, build, and that his head was either shaved or bald.

Jones counters that, like Patel, Khan's first description was not very accurate or detailed, and that the accuracy and detail of his description increased only after Khan was exposed to the suggestive pretrial identification procedures. There is

no written record of Khan's original description of Jones in the record. Deputy Patrolman Wally Smith testified that Khan initially described both of his attackers as black males, approximately six feet tall, weighing between 175 and 200 pounds and having short, black hair. However, according to Deputy Morris, Officer Smith told him that Khan described one of his attackers as being a black male, approximately six feet tall, weighing two hundred pounds, with a muscular build, dark complexion, very short hair, and no facial hair, and described the other attacker as a black male, between 5' 6" and 5' 8" tall, with a muscular build, very short hair and no facial hair.

Jones emphasizes that Deputy Morris's account of Khan's description is closer to the description given by Patel three days later. Jones speculates that either Deputy Morris "blended" the two descriptions together, or that Khan incorporated Patel's description of the robber into his own memory. However, even if we consider only Officer Smith's account, Khan's description was not terribly detailed, but neither was it inaccurate or inconsistent with his subsequent descriptions of Jones.[5]

The record is also unclear as to whether Khan was able to identify Jones from a

---

5. Jones claims that neither Khan nor Patel accurately described details of Jones's appearance such as facial hair or exact height. Khan and Patel's descriptions of Jones indicated that Jones had no facial hair. According to Jones, the photo taken from the motel depicts him as having a "dark mustache and goatee." Appellant's Brief at 45. However, the small amount of facial hair Jones had in this picture is not clearly visible, and is at most a few days' growth. The photo taken of Jones upon his arrest does more clearly show that Jones had a short goatee. Also, although we can find no indication of Jones's actual height in the record, Jones insinuates that he is taller than Khan and Patel's description of approximately six feet. Nevertheless, such

small discrepancies do not persuade us that Khan and Patel did not have an independent basis for their in-court identification of Jones. *See Wethington v. State*, 560 N.E.2d 496, 502 (Ind.1990) (holding that victims had an independent basis for in-court identification of the defendant despite a three to four-inch discrepancy in their descriptions of the defendant's height where the defendant's appearance roughly corresponded with the victim's initial descriptions); *Little v. State*, 475 N.E.2d 677, 683 (Ind.1985) (holding that witness had an independent basis to support in-court identification where the description made prior to any pre-trial identification was "substantially an accurate description of the defendant").

six-person photographic lineup. Deputy Morris testified that Khan did identify Jones from such an array, but Khan could not remember being shown a lineup containing Jones. Jones claims that Khan was able to identify only Winters when shown a photographic lineup containing pictures of both Winters and Jones. However, Jones does not support this contention with any citation to the record. Deputy Morris testified at the suppression hearing that photographs of individuals who resembled Jones were randomly chosen to be included in the lineup.[6]

Furthermore, Khan's in-court identification of Jones, approximately six months after the robbery, was unequivocal. Considering the totality of the circumstances, we hold that Khan had an independent basis for identifying Jones in court.

## III.

### Eyewitness Credibility Instruction

Lastly, Jones claims that the trial court erred when it refused to give his tendered instruction regarding the credibility of eyewitness testimony. Jury instructions are within the sound discretion of the trial court and we will not reverse unless there is an abuse of that discretion. *Clark v. State*, 732 N.E.2d 1225, 1230 (Ind.Ct.App.2000). To be erroneous, instructions must either as a whole misstate the law or otherwise mislead the jury. *Id.* Here, Jones tendered an instruction which stated:

Identification testimony is an expression of opinion or impression by the witness. In deciding whether or not to believe a witness who identifies the defendant, remember that you must consider not only whether the witness is telling the truth or is lying. You must also consider the possibility of "good faith mistake." In weighing the testimony of an eyewitness, you should remember that there is no proven relationship between a witness' confidence and a witness' accuracy. An eyewitness' certainty about an identification may have many sources, and does not necessarily bear on the correctness of the identification. Indeed, some believe that an eyewitness' confidence is among the least significant factors in predicting the accuracy of an identification. The accuracy of an identification is a question for you the jury to decide beyond a reasonable doubt.

Record at 128. The trial court rejected this instruction and instead chose to instruct the jury as follows:

Evidence has been introduced by testimony of witnesses who identified the defendant as an individual who entered the Best Western Motel on August 4, 1999 and on August 7, 1999. Generally a witness may not express an opinion. However, any person who had an opportunity to observe is permitted to express an opinion as to the identification of the defendant.

In determining the value of such opinion, you should consider the opportunity that such witness had to observe the facts and his knowledge of, and experience with, the subject. You will apply the general rules for determining the credibility of witnesses.

You may accept or disregard such opinion. It is for you to determine what weight should be given to it.

Record at 144. The trial court also gave a more general instruction regarding the weight of evidence and witness credibility which read:

---

6. Of course, if Khan was able to identify only Winters from a lineup that pictured both Winters and Jones, this would weigh against a finding that Khan had an independent basis for his in-court identification of Jones.

You are the exclusive judges of the evidence, the credibility of witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his or her ability and opportunity to observe; the manner and conduct of the witness while testifying; any interest, bias or prejudice the witness may have; any relationship with other witnesses or interested parties; and the reasonableness of the testimony of the witness considered in the light of all of the evidence in this case.

You should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth. You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony you must determine which of the witnesses you will believe and which of them you will disbelieve.

In weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience and common sense gained from day to day living. The number of witnesses who testify to a particular fact or the quantity of evidence on a particular point need not control your determination of the truth. You should give the greatest weight to that evidence which convinces you most strongly of its truthfulness.

Record at 141.

■ In *Emerson v. State*, 724 N.E.2d 605, 609 (Ind.2000), *reh'g denied*, our Su-

preme Court held that a trial court did not err when it refused to give the defendant's lengthy instruction regarding eyewitness credibility.[7] Instead, the *Emerson* court stated that, in Indiana, specific instructions on eyewitness testimony have been rejected in favor of general witness credibility instructions. *Id.* at 608. The *Emerson* court also noted that a trial court's instructions about credibility should not place undue attention on the testimony of any specific witness. *Id.* at 609; *see also Fry v. State*, 447 N.E.2d 569, 573 (Ind.1983) (sanctioning the use of a redacted version of defendant's tendered eyewitness credibility instruction but favoring use of general witness credibility instructions). Thus, under Indiana law, the trial court was not required to give *any* instruction regarding eyewitness testimony, much less Jones's requested instruction.

Recognizing that his argument has been rejected by Indiana courts, Jones instead argues that "in this case, the Sixth and Fourteenth Amendments required that Jones'[s] tendered instruction be given because he could not obtain a fair trial without it." Appellant's Brief at 16, n. 4. We find this argument curious. Jones is, in effect, asking us to hold that the law as enunciated by our Supreme Court is so erroneous as to deny him his due process right to a fair trial. We decline to do so.

Furthermore, although many federal Courts of Appeals have held that jury instructions regarding eyewitness testimony are preferred, or may even be required under certain circumstances,[8] this does not

---

**7.** The instruction tendered in *Emerson* would have informed the jury that it could consider such factors as lighting that might affect the witness's ability to observe and whether a witness's later identification was the product of his or her own recollection or some other influence. *Id.* at 608.

**8.** *See United States v. Telfaire*, 469 F.2d 552 (D.C.Cir.1972); *United States v. Gray*, 958 F.2d 9 (1st Cir.1992); *United States v. Luis*, 835 F.2d 37 (2d Cir.1987); *United States v. Barber*, 442 F.2d 517 (3d Cir.1971), *cert. denied*, 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275; *United States v. Brooks*, 928 F.2d 1403

mean that a state court is constitutionally required to do the same. *See Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). "Those federal Circuits which have adopted the [eyewitness identification instruction laid out in *United States v. Telfaire*, 469 F.2d 552 (D.C.Cir.1972)] have done so not on the basis of due process, but rather in the exercise of supervisory power over the administration of criminal justice in the United States District Courts." *Carey v. Maryland*, 617 F.Supp. 1143, 1147 (D.Md. 1985), *aff'd*, 795 F.2d 1007 (1986). Indeed, one commentator has noted that federal courts have consistently rejected the argument from habeas corpus petitioners that failure to give an eyewitness identification instruction at state trials violates due process. Michael H. Hoffheimer, *Requiring Jury Instructions on Eyewitness Identification Evidence at Federal Criminal Trials*, 80 J.CRIM. L. & CRIMINOLOGY 585, 598 n. 44 (1989). *See also Williams v. Lockhart*, 736 F.2d 1264, 1268 (8th Cir.1984) (state court's refusal to give eyewitness identification instruction did not rise to the level of constitutional error); *Love v. Young*, 781 F.2d 1307, 1319 (7th Cir.1986) (where victim had ample opportunity to observe her attacker and testified in a clear, direct, and unequivocal manner, failure to give *Telfaire* instruction did not violate due process), *cert. denied*, 476 U.S. 1185, 106 S.Ct. 2923, 91 L.Ed.2d 551. The trial court did not err by failing to give Jones's tendered eyewitness identification instruction.

Our decision should not be read, however, to indicate that we do not recognize the growing body of scientific work which has challenged many commonly held beliefs about eyewitness credibility. As this court stated in *Reed v. State*, 687 N.E.2d 209, 213 (Ind.Ct.App.1997), *reh'g denied*, "we are not thoroughly convinced that the average juror is conversant with the likelihood or frequency with which misidentifications are made by seemingly unequivocal eyewitnesses." In *Reed*, the trial court refused the indigent defendant's request for public funds to hire an eyewitness identification expert, and the defendant was convicted solely upon the testimony of one eyewitness. Although we held that the defendant had not demonstrated that such funds were necessary to assure an adequate defense, we cautioned that "trial courts might be well advised to permit such expert testimony in order to assist the jury in its evaluation of the evidence." *Id.* We also noted that "[t]he concept that eyewitness identification is flawed or subject to serious question in a particular instance may be placed within the jury's realm of understanding by careful cross-examination and by counsel's argument to the jury." *Id.* at 213–214.

The same applies in the present case. Careful cross-examination and arguments to the jury, in addition to privately funded expert witnesses, are capable of exposing the jury to any weaknesses in eyewitness identification. The day may come when some form of cautionary instruction to the

(4th Cir.1991), *cert. denied*, 502 U.S. 845, 112 S.Ct. 140, 116 L.Ed.2d 106; *United States v. Rhodes*, 569 F.2d 384 (5th Cir.1978), *cert. denied*, 439 U.S. 844, 99 S.Ct. 138, 58 L.Ed.2d 143; *United States v. Tipton*, 11 F.3d 602 (6th Cir.1993), *cert. denied*, 512 U.S. 1212, 114 S.Ct. 2692, 129 L.Ed.2d 823 (1994); *United States v. Anderson*, 739 F.2d 1254 (7th Cir. 1984); *United States v. Mays*, 822 F.2d 793 (8th Cir.1987); *United States v. Thoma*, 713 F.2d 604 (10th Cir.1983), *cert. denied*, 464 U.S. 1047, 104 S.Ct. 721, 79 L.Ed.2d 183 (1984) (all favoring or requiring eyewitness identification instructions under certain circumstances); *but see United States v. Miranda*, 986 F.2d 1283 (9th Cir.1993), *cert. denied*, 508 U.S. 929, 113 S.Ct. 2393, 124 L.Ed.2d 295; *United States v. Martinez*, 763 F.2d 1297 (11th Cir.1985) (both not requiring jury instructions on eyewitness credibility).

jury regarding eyewitness identification is required in a particular case. However, that day is not yet here, and it is not within our prerogative to require such instruction in the case before us.

*Conclusion*

The trial court abused its discretion by limiting the cross-examination of Jones's accomplice with regard to the sentence he could have received had he not testified against Jones. Therefore, we reverse the judgment of conviction upon the charge relating to the August 4, 1999 robbery. The trial court did not err by allowing Jones to be identified in court, nor did the trial court err when it refused Jones's tendered instruction concerning eyewitness credibility. Therefore, we affirm the conviction upon the charge relating to the August 7, 1999 robbery.

SHARPNACK, C.J., and MATHIAS, J., concur.