Dujuan **EMERSON**, Appellant
(Defendant Below),

v.

State of **INDIANA**, Appellee
(Plaintiff Below).

No. 49S00–9808–CR–419.

Supreme Court of Indiana.

March 1, 2000.

Ann M. Skinner, Marion County Public Defender, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

A jury found appellant Dujuan Emerson guilty of felony murder, Ind.Code § 35–42–1–1; murder, Ind.Code § 35–42–1–1; conspiracy to commit robbery, a class A felony, Ind.Code § 35–41–5–2; two counts of robbery, class A and class B felonies, Ind.Code § 35–42–5–1; and carrying a handgun without a license, a class A misdemeanor, Ind.Code § 35–47–2–1 and –23. The trial court sentenced him to sixty-five years for felony murder, twenty years for conspiracy, twenty years for each count of robbery (to run consecutively with the felony murder conviction), and one year for carrying a handgun without a license. The total sentence is 105 years.

On direct appeal, Emerson raises the following issues:

1. Whether the trial court erred in refusing to give Emerson's tendered instruction on identification;

2. Whether an eyewitness was properly permitted to identify Emerson during his testimony;

3. Whether the identity evidence was sufficient to support the convictions;

4. Whether a pre-sentence report prepared by Emerson's probation officer was properly considered by the trial judge during sentencing; and

5. Whether the consecutive sentences for felony murder and the underlying robbery constituted double jeopardy.

## Statement of the Facts

On the evening of July 31, 1996, several people were gathered at Watkins Park in Indianapolis watching and playing basketball. Among them were Kenneth Mason, Anthony Robinson, Mark Garrett and Ronnie Williams. Two men carrying guns walked onto the court during one of the games. One of these men, Larry Porter, approached Kenneth Mason and fatally shot him as Mason attempted to flee. The other man confronted the on-lookers and demanded various valuables. The State accused Dujuan Emerson as the non-shooter accomplice.

The parties scheduled three witnesses to testify about the identity of the non-shooter: Robinson and Garrett for the State, Williams for the defense. Williams would testify that he knew Emerson, but did not see him at Watkins Park that night. Through the use of a photo array, Robinson identified Emerson five days after the incident. In contrast, Garrett did not attempt an identification of Emerson until trial, two years after the shooting.

Both Robinson and Garrett gave statements to the police soon after the shooting. In identifying the non-shooter, Robinson described him to be around 5'9" to 5'10" in height, of medium build and dark-skinned. (R. at 224.) The non-shooter had pointed a gun at Robinson and robbed him of his jewelry. (R. at 220–22.) Although Garrett stated that he "really didn't see his face," he described the non-shooter as an older man between 5'8" and 5'9". (R. at 189–192.) He too was robbed by the non-shooter. (R. at 176–77.) At the time of the shooting, Emerson was twenty-five years old, 200 pounds and approximately 5'5" tall. (R. at 105.)

In an attempt to see whether Garrett could pick Emerson out from a group of men, the defense moved for a pre-trial line-up. The court denied this motion. Subsequently, the defense moved *in limine* to prevent Garrett from making an identification at trial. The defense justi-

fied this request by citing Garrett's failure to make an out-of-court identification, the court's denial of the motion for a pre-trial line-up, and the presence of the State's witnesses at prior proceedings while Emerson was also present. Counsel argued that it would be unduly subjective to have a witness make his first identification of the accomplice from the stand nearly two years after the shooting. Again, the court denied Emerson's motion.

Both parties presented their witnesses and thoroughly cross-examined them concerning the discrepancies. Emerson was convicted on each count.

## I. Instruction on Identification

Emerson first asserts as error that the trial court rejected his tendered identity instruction. Emerson asserts that using a general credibility instruction was inadequate, citing the defense's theory of mistaken identity and saying that the witnesses gave varying descriptions of the non-shooter and only one witness had previously identified Emerson out of court. In response, the State claims that the tendered identity instruction contained language that would have invaded the province of the jury.

We review trial court decisions concerning instructions for an abuse of discretion. *Harrison v. State*, 699 N.E.2d 645 (Ind.1998); *Fields v. State*, 679 N.E.2d 1315 (Ind.1997). In reviewing the lower court's refusal to provide disputed instructions, we consider (1) whether the instruction correctly states the law, (2) whether there is evidence in the record to support the giving of the instruction, and (3) whether the substance of the tendered instruction is covered by other instructions. *Harrison*, 699 N.E.2d at 649.

The lengthy instruction proposed by Emerson told the jury it could consider conditions such as lighting that might affect a witness's ability to observe, whether a witness's later identification was the product of his or her own recollection as opposed to some other influence, and so on. (R. at 77–79.)

A substantially similar instruction was tendered in *Fry v. State*, 447 N.E.2d 569, 572–73 (Ind.1983). While we sanctioned a substantially shortened identity instruction in that case, we commented that rather than endorsing such an instruction, "it has been rejected in favor of a more general instruction upon the credibility of the witnesses." *Id.* at 573. Rather than give Emerson's instruction, the trial court found that its preliminary instruction regarding credibility adequately covered the identification issue. The instruction given was as follows:

You are the exclusive judges of the evidence, the credibility of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his or her ability and opportunity to observe; the memory, manner and conduct of the witness while testifying; any interest, bias or prejudice the witness may have; any relationship with other witnesses or interested parties; and the reasonableness of the testimony of the witness considered in light of all the evidence in the case.

You should attempt to apply the evidence to the presumption that the defendant is innocent and the belief that every witness is telling the truth. You should not disregard the testimony of any witness without a reason and without careful consideration. However, if you find that the testimony of a witness is so unreasonable as to be unworthy of belief, or if you find conflict between the testimony of witnesses to the extent that you cannot believe all of them, then you must determine which of the witnesses you will believe and which of them you will disbelieve.

In weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience and common sense gained from day

to day living. You may find that the number of witnesses who testify to a particular fact, on one side or the other, or the quantity of evidence on a particular point is in conflict with your own determination of the truth, and in such case you should give the greatest weight to that evidence which convinces you most strongly of its truthfulness.

(R. at 69.)

Here, the court's instruction properly advised the jury on assessing the credibility of witnesses. Emerson's tendered instruction was quite long and detailed concerning the attention the jury should give to the identification witnesses. Further, the court's instruction about credibility did not place undue attention on the testimony of specific witnesses, as did the instruction tendered by Emerson. The trial court properly refused Emerson's instruction.

## II. Propriety of the In–Court Identification

■ Emerson next asserts that Garrett's in-court identification was impermissibly suggestive. He contends that Garrett never selected him from a group of men. Instead, Garrett's identification was from the stand nearly two years after Mason's death. The State responds by asserting that Garret had a sufficient basis for his identification and was thoroughly cross-examined by defense counsel concerning it.

■ A degree of suggestiveness is inherent in all in-court identifications; the practical necessity of having the appellant sit at the defendant's table with defense counsel naturally sets him apart from everyone else in the courtroom. *Griffin v. State*, 493 N.E.2d 439, 442 (Ind.1986). Whether a particular identification procedure rises to a level of suggestiveness that constitutes reversible error must be determined from the context of the case. *Id.*

Suggestiveness is proscribed only when, under the circumstances, it can reasonably be avoided. Because of a criminal defendant's right to be present and confront his accusers, the suggestiveness in this case could not be avoided. Here, no extraordinary effort was made to single out Emerson at trial, and the witness professed no doubt as to the identity of his assailant. (R. at 180–81, 257–59.)

■ That Garrett had made no previous identification of the defendant in the two years since the shooting and yet was able to identify him at trial was a matter of weight and credibility for the jury to consider. *Harris v. State*, 619 N.E.2d 577 (Ind.1993). An in-court identification does not become invalid merely because an extended time passes between the time of the crime and the initial identification. *See, e.g., Wolfe v. State* 562 N.E.2d 414, 416 (Ind.1990).

Appellant contends that because some of the State's witnesses were present during a pre-trial proceeding that Emerson attended, Garrett's identification was unduly suggestive. We find this claim unavailing. On the stand, Garrett testified that he had not been present at any previous proceeding where Emerson was also present. (R. at 181.) Garrett's testimony need not have been prohibited because of a former impermissible confrontation. *See Goudy v. State*, 689 N.E.2d 686, 694–95 (Ind.1997).

■ The primary element of suggestiveness was Emerson's position at the defense table when Garrett identified him. Due process does not require that a victim identify his assailant from a courtroom containing people of similar physical characteristics. *Griffin*, 493 N.E.2d at 442. It was the jury's function to reconcile Garrett's ability to identify Emerson with the time-span between the crime and trial.

■ Moreover, Garrett's testimony was not the only evidence linking Emerson to Watkins Park. Robinson had identified Emerson from a photographic array soon after the shooting, and he also testified that Emerson was Porter's accomplice the night Mason was murdered. (R. at 224–27.) A single eyewitness' testimony is suf-

ficient to sustain a conviction. *Anderson v. State,* 469 N.E.2d 1166, 1169 (Ind.1984), cert. denied, 469 U.S. 1226, 105 S.Ct. 1220, 84 L.Ed.2d 361 (1985). Because Garrett's testimony was not unduly suggestive and other evidence linked Emerson to the scene, there was no error in the trial court's admission of Garrett's identification.

### III. Sufficiency of the Evidence

 Emerson next asserts that the evidence was insufficient to prove he participated in the crimes charged.[1] Emerson points to several discrepancies in the witnesses' descriptions to police and his actual appearance. (R. at 224, 189–92, 105.) The State responds by stating that the inconsistencies in the evidence are only minor, and that these differences are to be resolved by the jury.

 Inconsistencies in identification testimony go only to the weight of that testimony; it is the task of the jury to weigh the evidence and to determine the credibility of the witnesses. *See Parsley v. State,* 557 N.E.2d 1331, 1335 (Ind.1990). This Court does not weigh the evidence or resolve questions of credibility when determining whether the identification evidence is sufficient to sustain a conviction. Rather, we look to the evidence and the reasonable inferences therefrom which support the verdict of the jury. *Anderson,* 469 N.E.2d at 1169.

 If there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt, then the conviction must be affirmed. *Smith v. State,* 275 Ind. 642, 419 N.E.2d 743 (1981). The unequivocal identification of the defendant by a witness in court, despite discrepancies between his description of the perpetrator

and the appearance of the defendant, is sufficient to support a conviction. *See Killion v. State,* 464 N.E.2d 920 (Ind.1984).

The jury heard three witnesses. Two stated unequivocally that Emerson was the person who robbed them at gunpoint while the other maintained that Emerson was not present that evening. (R. at 224–27, 189–92, 299.) It was entirely reasonable for a jury to believe the identification testimony of two witnesses, both of whom were physically robbed by the shooter and both of whom identified the same person, that Emerson was, in fact, the accomplice of Larry Porter the night Kenneth Mason was murdered.

While there were some differences between the State's witnesses' descriptions and Emerson's actual appearance, such discrepancies could have been, and most likely were, considered by the jury in assessing the credibility of their testimony. Moreover, a clear conflict existed between the testimony of Garrett and Robinson and the testimony of Williams, who stated Emerson was not present that night. It is the jury's function to resolve such conflicts. Also, the unequivocal identification of Emerson by both Robinson and Garrett in court, despite discrepancies between their original out-of-court descriptions, is sufficient to support a conviction. *See Killion,* 464 N.E.2d at 921. Both Robinson and Garrett identified the defendant in court without hesitation, and both were steadfast in their determination that Emerson was Porter's accomplice. (R. at 189–92, 224–27.)

The evidence was sufficient to support the jury's conclusion that Emerson was the non-shooter. *See Hill v. State,* 450 N.E.2d 64, 65 (Ind.1983) (contradictory evidence about bandit's height, hair color, and cap

---

1. Emerson does not attack the sufficiency of the evidence supporting any specific crime charged. Emerson attacks only the identification evidence asserting that it was insufficient to establish that he was "[any]where near Watkins Park on the night of the shoot-

ing." (Appellant's Br. at 17.) By contrast, for example, Porter contended on appeal that there was inadequate evidence that he and Emerson agreed to act in concert. *Porter v. State,* 715 N.E.2d 868, 871–72 (Ind.1999).

not significant enough to preclude a jury determination of guilt).

## IV. Probation Officer's Pre-sentence Report

Under Ind.Code § 35–38–1–8(a), a defendant convicted of a felony may not be sentenced before a written pre-sentence report is prepared by a probation officer and considered by the sentencing court. In preparing his report, the probation officer contacted Emerson to attempt an interview, but Emerson demanded legal representation before consenting to the interview. The probation officer then contacted Emerson's attorney for assistance. Although it is unclear whether the attorney instructed Emerson to comply, the probation officer's second attempt to interview Emerson was also denied. The probation officer included the following in his pre-sentence report:

> The defendant was also uncooperative in regards to the Presentence Investigation. This Officer attempted to interview the defendant on two occasions. The defendant refused to answer any questions. He indicated that he did not care the Presentence Investigation was a Court-ordered report. Due to the defendant's non-compliance with the Presentence Investigation, his extensive criminal history, and the seriousness of the instant offense, this Officer feels the defendant is appropriate for a lengthy sentence to be served in the Indiana Department of Correction.

(R. at 119.)

Emerson asserts that his refusal to be interviewed had a negative impact on the preparation of the report, and that because of this prejudicial impact, he was denied an unbiased report that provided a balanced view of his social history. The State responds by emphasizing that Emerson had ample opportunity to participate in the report's compilation and refute any inaccuracies or prejudicial remarks found therein.

While Emerson asserted a right to counsel during his pre-sentence investigation, this Court has held that no such right exists. *Lang v. State*, 461 N.E.2d 1110, 1115–16 (Ind.1984). Emerson is correct in stating that the pre-sentence report should consist of neutral and professional observations rather than personal opinions, although the probation officer is given wide discretion to include in the pre-sentence report any matters deemed relevant to determining a sentence. *Allen v. State*, 720 N.E.2d 707, 714 (Ind.1999). It was not error for the probation officer to consider "the whole history" of Emerson's "encounters with the criminal justice system." *See id.* at 715. One of these was Emerson's approach to the presentence report.

Emerson's primary concern is the prejudicial effect his refusal to participate had on the probation officer's recommendation of a "lengthy sentence." Of course, Emerson had a full opportunity to testify at the sentencing hearing. Before Emerson testified at the hearing, defense counsel told the court "some of the information that was not available to the probation officer will be made available through testimony here today." (R. at 344.) Both Emerson and his mother testified during the sentencing hearing about his family/personal background. (R. at 344–49, 350–54.) This clearly represented an opportunity to refute any possible "inaccuracies" caused by his refusal to be interviewed previously.

Most importantly for purposes of this appeal, the trial court did not base the sentence on Emerson's refusal to be interviewed. Rather, it considered "the risk the Defendant would commit another crime, the nature and circumstances of this crime, Defendant's prior criminal record, character and condition, as well as the input of the victim's family in this matter, and the Defendant's statement." (R. at 364.) The trial court listed the reasons for imposing the sentence and took into account the facts Emerson claimed were omitted from the pre-sentence report.

(*Id.*) We see no justification for reversal or re-sentencing because of the pre-sentence report. The probation officer did the best he could under the circumstances.

## V. Double Jeopardy

Emerson's final argument is that his consecutive sentences for felony murder and robbery constituted double jeopardy. The State concedes that the trial court improperly sentenced Emerson for both felony murder and the underlying felony.

## VII. Conclusion

We remand with directions to vacate the robbery conviction. The judgment of the trial court is otherwise affirmed.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.