Henry LEWIS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0804–CR–218.

Court of Appeals of Indiana.

Dec. 24, 2008.

Ellen M. O'Connor, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Henry Lewis was convicted after a jury trial of burglary as a Class B felony[1] and robbery as a Class B felony.[2] Specifically, Lewis contends that the trial court abused its discretion in admitting identification evidence consisting of photo arrays and in refusing to give his tendered jury instructions regarding eyewitness credibility. He also contends that the evidence is insufficient to support his conviction for robbery as a Class B felony and asks us to reduce it to a Class C felony. Finding no abuse of

---

1. Ind.Code § 35–43–2–1(1).

2. Ind.Code § 35–42–5–1.

discretion in the admission of the identification evidence and the refusal of the tendered jury instructions and concluding that the evidence is sufficient to prove that the victim suffered bodily injury, thereby proving Class B felony robbery, we affirm.

## Facts and Procedural History

Marvin Engelking lived in an apartment located inside a commercial building on East 10th Street in Indianapolis, Indiana. He worked for the building's owner, Victor Demichieli, who operated a business out of the building. The back of the building contained a storage area, which was enclosed by a six-foot-high chain link fence topped with barbed wire, where trucks and other equipment were stored. The gate to the fence was secured by a padlock and chain.

On March 2, 2005, at approximately 9:30 a.m., Engelking returned to the building and discovered the gate to the fence had been "busted open." Tr. p. 58. As soon as Engelking entered the property, he heard the metal door to the building slam shut. Engelking noticed that a window to the building had been broken. He men ran to the back of the property and saw a man, later identified as Lewis, crawling under a section of fence that had been pried up from the ground. Lewis was dressed in green coveralls and was wearing jersey work gloves. As Lewis stood up, Engelking noticed that he had a bucket of tools and a chainsaw that belonged to Demichieli. Engelking recognized his De-Walt hammer drill on top of the bucket.

Engelking ran after Lewis and followed him down an alley. Because Lewis did not know that he was being followed, Engelking was able to catch up to him and tap him on the shoulder. Engelking told Lewis that he had Engelking's tools, to which Lewis responded that the tools in his possession were not Engelking's. Engelking told Lewis that he had observed Lewis crawling underneath the fence with the tools. Lewis put down the tools and began fidgeting in his pocket as though he had a gun or knife. He then punched Engelking in the face "pretty hard." Id. at 76. Lewis swung the chainsaw at Engelking, but Engelking was able to step out of the way. Lewis grabbed a circular saw from the bucket and ran off with both it and the chainsaw. Engelking pursued Lewis, and while doing so, he saw a utility van and asked the driver to call the police. Engelking continued his pursuit and observed Lewis place the two saws into a dumpster. Engelking used his two-way radio to call Demichieli and inform him of the robbery and the location of the saws. Shortly thereafter, the police arrived, and Engelking indicated the direction in which the robber had run.

Indianapolis Police Officer Mark Rand, who arrived to participate in the chase, observed Lewis walk toward another marked police car traveling in his direction and then turn and run away. Because Officer Rand was in a car without overhead lights, he waited until Lewis was within twenty feet of his car before he exited and identified himself as a police officer. Officer Rand asked Lewis to stop so he could talk to him. Lewis immediately turned and ran between two houses. Officer Rand retrieved his police service dog from his police car and began tracking Lewis. They were able to track Lewis to an abandoned house, but the dog lost the scent.

A few days later, Engelking identified Lewis from a photo array as the person who had hit him and taken the items from him and Demichieli. Officer Rand also identified Lewis from a photo array as the person who had run away from him on the day of the crime. The State charged Lewis with burglary as a Class B felony, burglary as a Class C felony, robbery as a

Class B felony, criminal recklessness as a Class D felony, and theft as a Class D felony. The State also alleged that Lewis was a habitual offender.

In August 2006, a jury found Lewis guilty of the two counts of burglary, robbery, and criminal recklessness. This Court then reversed Lewis's convictions because the trial court erred in allowing the State to re-open its case during closing arguments to present additional evidence. *Lewis v. State*, No. 49A02–0610–CR–921, 865 N.E.2d 1083 (Ind.Ct.App. Apr. 24, 2007). Lewis was retried in February 2008, and a jury again found him guilty of the two counts of burglary, robbery, and criminal recklessness. After the jury verdict, Lewis pled guilty to being a habitual offender pursuant to a plea agreement, which provided his aggregate sentence would not exceed forty-five years. The trial court merged the Class C felony burglary conviction with the Class B felony burglary conviction and merged the criminal recklessness conviction with the robbery conviction. Lewis was sentenced to concurrent twenty-year terms for his Class B felony burglary conviction and his Class B felony robbery conviction. The trial court enhanced Lewis's robbery sentence by twenty-five years for the habitual offender adjudication, for an aggregate sentence of forty-five years. Lewis now appeals.

## Discussion and Decision

### I. Admission of Evidence

■ Lewis contends that the trial court erred in admitting the identification evidence consisting of photo arrays. The admission of evidence is within the sound discretion of the trial court. *Cox v. State*, 774 N.E.2d 1025, 1026 (Ind.Ct.App.2002). We will not reverse the trial court's decision to admit evidence absent an abuse of discretion. *Boney v. State*, 880 N.E.2d 279, 289 (Ind.Ct.App.2008), *trans. denied.*

An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Id.*

■ The identification of a defendant must comport with the standards of due process. *Allen v. State*, 813 N.E.2d 349, 359 (Ind.Ct.App.2004), *trans. denied.* If an out-of-court identification was unduly suggestive, then the testimony relating to it is inadmissible. *Dillard v. State*, 827 N.E.2d 570, 573 (Ind.Ct.App.2005), *trans. denied.* "A photographic array is impermissibly suggestive if it raises a substantial likelihood of misidentification given the totality of the circumstances." *Williams v. State*, 774 N.E.2d 889, 890 (Ind.2002). "Our [S]upreme [C]ourt has held that a photo array is impermissibly suggestive only where the array is accompanied by verbal communications or the photographs in the display include graphic characteristics that distinguish and emphasize the defendant's photograph in an unusually suggestive manner." *Allen*, 813 N.E.2d at 359 (citing *Bell v. State*, 622 N.E.2d 450, 455 (Ind.1993), *overruled on other grounds*).

Here, the evidence at issue is a photo array consisting of pictures of six individuals that Detective Marvin Cummings showed Engelking on March 18, 2005. Detective Cummings asked Engelking if he recognized anybody in the photos and, if so, to indicate from where he recognized the individual. Tr. p. 308. Engelking immediately pointed to the picture of Lewis and indicated that Lewis was the person who had robbed him. *Id.* Detective Cummings later showed the same photo array to Officer Rand, who immediately identified Lewis's photo and said, "that's the guy." *Id.* at 310. Both Engelking and Officer Rand also identified Lewis at trial.

Lewis does not argue that the manner in which the photo array was assembled was impermissibly suggestive. Instead, he argues that the trial court abused its discretion in admitting the photo arrays into evidence at his jury trial because the out-of-court identifications made by Engelking and Officer Rand using the photo array should have been inadmissible because the identifications were not recorded in some manner, either written, video, or audio. He bases his contention on a decision by the New Jersey Supreme Court, in which that court exercised its supervisory powers under the New Jersey Constitution to require that, "as a condition to the admissibility of an out-of-court identification, law enforcement officers make a written record detailing the out-of-court identification procedure." *State v. Delgado*, 188 N.J. 48, 902 A.2d 888, 897 (2006). He believes that Indiana courts should adopt this procedure because if the identifications had been recorded, there could be more confidence in the accuracy and integrity of the witnesses' identifications of him.

We decline Lewis's request to adopt such a procedure. He has not pointed to any Indiana statutory or constitutional provision that requires a witness's out-of-court identification of a suspect to be recorded by any manner, either written, video, or audio. Because we are not bound by New Jersey law, and Lewis has not provided us with any Indiana law to support his contention, we conclude that the trial court did not abuse its discretion when it admitted the identification evidence, consisting of the photo arrays and the witnesses' testimony regarding the photo arrays.

## II. Jury Instructions

■ Lewis contends that the trial court erred when it refused to give either one of his tendered jury instructions regarding eyewitness credibility. He argues that the

major issue in this case was eyewitness identification, and his defense theory was that the witnesses had misidentified him as the perpetrator. Therefore, he claims that he was entitled to have the jury instructed on his theory of defense.

■■ The manner of instructing a jury is left to the sound discretion of the trial court, and we review its decision only for an abuse of discretion. *Jackson v. State*, 890 N.E.2d 11, 20 (Ind.Ct.App.2008). When a trial court refuses to give a tendered instruction, we must consider the following: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. *Id,*

At trial, Lewis tendered two proposed jury instructions relating to eyewitness identification. The instructions proposed by Lewis provided that the State had to prove the identity of the defendant beyond a reasonable doubt. Appellant's App. p. 176–77. They also provided factors that the jury could consider when evaluating the identification testimony of a witness, including: whether the witness was influenced by the circumstances as they existed when the identification was made, the length of time between the crime and identification, whether the witness had the capacity and opportunity to make a reliable observation of the defendant, and the truthfulness of the witness. *Id.* The trial court refused to give the instructions because it determined that the information conveyed in Lewis's tendered instructions was already covered in substance by other instructions given by the trial court.

Our Supreme Court held in *Emerson v. State*, 724 N.E.2d 605 (Ind.2000), *reh'g denied,* that the trial court properly advised the jury on assessing witness credibility

and properly refused to give the defendant's tendered instructions. *Id.* at 609. There, the defendant tendered an instruction that informed the jury it could consider certain conditions that could affect a witness's ability to observe and whether the witness had been influenced in his or her identification. *Id.* at 608. The trial court refused to give the defendant's proposed instruction because it found that "its preliminary instructions regarding credibility adequately covered the identification issue." *Id.* On appeal, the defendant argued that a general credibility instruction did not adequately instruct the jury in light of the defense theory of mistaken identity, varying descriptions by the witnesses, and the fact that only one witness had identified the defendant out of court. *Id.* In reaching its decision, our Supreme Court noted that, in the past, rather than endorsing similar identification instructions, such have been rejected in favor of more general instructions upon the credibility of the witnesses. *Id.*

In this case, rather than giving Lewis's proposed instructions, the trial court gave the following preliminary instruction regarding credibility;

> You are the exclusive judges of the evidence, which may be either witness testimony or exhibits. In considering the evidence, it is your duty to decide the value you give to the exhibits you receive and the testimony you hear.
> In determining the significance of a witness's testimony, some factors you may consider are:
> - the witness's ability and opportunity to observe
> - the behavior of the witness while testifying
> - any interest, bias, or prejudice the witness may have
> - any relationship with people involved in the case

- the reasonableness of the testimony considering the other evidence
- your knowledge, common sense, and life experiences

> You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony, you must determine which of the witnesses you will believe and which of them you will disbelieve.
> The quantity of evidence or the number of witnesses need not control your determination of the truth. You should give the greater value to the evidence you find most convincing.

Appellant's App. p. 125. Additionally, the trial court gave instructions explaining that the State must prove that Lewis was guilty of the crimes charged beyond a reasonable doubt. *Id.* at 124, 145. We conclude that the instructions given by the trial court properly advised the jury on assessing the credibility of witnesses and that the substance of Lewis's tendered instructions was covered by the instructions given by the trial court. The trial court did not abuse its discretion when it refused to give Lewis's proposed jury instructions.

### III. Sufficiency of the Evidence

■ Lewis contends that the evidence is insufficient to support his conviction for robbery as a Class B felony and asks us to reduce it to a Class C felony. To convict Lewis of robbery as a Class B felony as charged here, the State was required to prove that he knowingly or intentionally took property from Engelking or from the presence of Engelking by using or threatening force or putting Engelking in fear, which resulted in bodily injury, Ind.Code § 35–42–5–1. "Bodily injury" is defined as "any impairment of physical condition, including physical pain." Ind.Code § 35–41–

1–4. Specifically, Lewis argues that insufficient evidence was presented to prove that Engelking suffered any bodily injury. He claims that because Engelking never testified that he experienced any physical pain, the evidence does not prove this element.

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind.2007). It is the factfinder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider only the evidence most favorable to the trial court's ruling. *Id.* Appellate courts affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quotation omitted). It is therefore not necessary that the evidence "overcome every reasonable hypothesis of innocence." *Id.* at 147 (quotation omitted). The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

At trial, the following exchange occurred between the prosecutor and Engelking:

Q: Did, did [Lewis] slap you?

A: No. He, he punched me with his fist.

Q: Okay. Now, you said that he didn't knock you down, and you thought that surprised him.

A: Yeah.

Q: Did it feel good?

A: *No, it didn't feel good,*

Q: Okay. Did it hurt?

A: I don't think I was worried about [it] at the time. I think my adrenalin[e] was running.

Q: I know you're very tough, Marvin, and I know that you weren't knocked down, and that's good, and that's an impressive thing. But is it, is it fair to say that it hurt, or did it not hurt at all?

A: I don't even think I realized it because the adrenalin[e] was running. You don't think about that kind of stuff.

Q: Okay. Did you have any, did you have a mark or, or did—later when the adrenalin[e] stopped pumping, then, was this, was this a good shot, or was this a, was this a friendly little tap?

A: *No. He hit me pretty hard.*

Q: Okay.

Tr. p. 75–76 (emphases added). Although Engelking may have gamely attempted to minimize the physical pain he felt by stating that his adrenaline was running, the jury was free to infer from Engelking's comments that he was hit "pretty hard" and that "it didn't feel good" that he indeed felt physical pain, thus experiencing bodily injury. *See Mathis v. State*, 859 N.E.2d 1275, 1281 (Ind.Ct.App.2007) (concluding evidence sufficient to support "bodily injury" element of battery where victim testified that the defendant's actions caused her to "hurt" and "kinda see[ ] stars for a second"); *see also Rickert v. State*, 876 N.E.2d 1139, 1141–42 (Ind.Ct. App.2007) (concluding that jury was free to infer that the victim was in fear during robbery despite victim's testimony to the contrary given evidence that robbery happened quickly, victim did not register what was happening at the time, and victim was scared afterward). The evidence is therefore sufficient to support Lewis's conviction for Class B felony robbery.

Affirmed.

CRONE, J., concurs in part and concurs in result in part with separate opinion.

KIRSCH, J., concurs in part and dissents in part with separate opinion.

CRONE, Judge, concurring in part and concurring in result in part.

I fully concur in Parts I and II of the lead opinion. I respectfully disagree, however, with the analysis in Part III, to the extent it suggests that any degree of pain, no matter how slight, is sufficient to constitute an "impairment of physical condition" and therefore constitute "bodily injury" for purposes of Indiana Code Section 35–41–1–4. I believe that something more than the mere sensation of pain is required; to hold otherwise is to read "impairment" out of the statute.

That said, I believe that Engelking's testimony that Lewis "punched" him in the face "pretty hard" and that "it didn't feel good" is sufficient to establish that he suffered bodily injury. We expect jurors to draw upon their own personal knowledge and experience in deciding guilt or innocence. *Carter v. State*, 754 N.E.2d 877, 882 (Ind.2001), *cert. denied* (2002). Anyone who has been punched "pretty hard" in the face would readily agree that such an impact is sufficiently painful to allow an inference of impairment and therefore bodily injury. Therefore, I concur in result as to Part III.

KIRSCH, J., concurring in part and dissenting in part.

I fully concur in Parts I and II of the decision of my colleagues regarding the admission of the evidence and the challenged jury instruction, but I respectfully dissent from their decision finding the evidence sufficient to convict Lewis of robbery as a Class B felony. To convict Lewis of robbery as a Class B felony as charged, the State was required to prove that he knowingly or intentionally took property from Engelking or from the presence of Engelking by using or threatening force or putting Engelking in fear, which resulted in bodily injury. Ind.Code § 35–42–5–1. "Bodily injury" is defined as "any impairment of physical condition, including physical pain." Ind.Code § 35–41–1–4. Lewis contends that because Engelking never testified that he suffered any pain and presented no other evidence of the impairment of any physical condition, the evidence was insufficient to prove that Engelking suffered any bodily injury.

At trial, Engelking testified that Lewis punched him in the face "pretty hard" and "it didn't feel good." *Tr.* at 76. However, Engelking never testified that he experienced any pain as a result of being punched in the face; instead, when asked by the State if it hurt when he was punched by Lewis, Engelking stated that he did not think about it because his "adrenalin was running." *Id.* Lewis argues that these denials of pain render the evidence insufficient. I agree. The State failed to elicit any evidence that Engelking suffered pain as a result of being hit by Lewis, failed to follow up on his answers, and failed to put on any other evidence of pain experienced by Engelking.

The trier of fact could only speculate as to whether the punch amounted to pain. Such speculation is not a reasonable inference drawn from the evidence presented and does not constitute proof beyond a reasonable doubt that the touching by Lewis resulted in bodily injury to Engelking in the form of pain. It is as reasonable to speculate that Engelking's adrenaline rush blocked any sensation of pain and this is what he testified. I would vacate Lewis's conviction for robbery as a Class B felony and remand with instructions to enter a conviction for robbery as a Class C

felony and to resentence Lewis accordingly.