**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 15 2013, 6:05 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK A. THOMA**
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

| | | |
|---|---|---|
| ANDRE HAIRSTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A05-1211-CR-601 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

---

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Wendy W. Davis, Judge
Cause No. 02D06-1104-FB-90

---

**July 15, 2013**


**MEMORANDUM DECISION - NOT FOR PUBLICATION**


**BROWN, Judge**

Andre Hairston appeals his two convictions for dealing cocaine as class B felonies. Hairston raises one issue, which we restate as whether the evidence is sufficient to sustain his convictions. We affirm.

## FACTS AND PROCEDURAL HISTORY

In April 2011, a confidential informant (the "C.I.") worked with the Fort Wayne Police to conduct two controlled buys of crack cocaine from Hairston. On April 20, 2011, the C.I. and Fort Wayne Police Detective Jamie Masters met at the C.I.'s apartment, and the C.I. called Hairston, who the C.I. knew as "Dray." Transcript at 82. The C.I. and Hairston agreed to meet in the parking lot of the C.I.'s apartment complex about ten or fifteen minutes later. Detective Masters searched the C.I., placed an electronic monitoring and recording device on her, and gave her pre-recorded buy money in the amount of $100. Detective Masters worked with other officers so that the C.I. could be viewed at all times. Sergeant Mark Walters performed pre-buy surveillance of an apartment at which the police believed Hairston was living. Detective Masters advised Sergeant Walters via radio that the C.I. had placed a call to Hairston.

Approximately ten minutes after receiving Detective Masters's message, Sergeant Walters observed Hairston exit the apartment, enter a black Ford Explorer, and begin to drive. Sergeant Walters ran the license plate numbers of the Explorer and confirmed that the vehicle was registered to Hairston. Sergeant Walters observed that Hairston was the only person inside the Explorer and followed the vehicle to the parking lot of the C.I.'s apartment complex. Sergeant Walters did not follow the Explorer into the parking lot as Detective Darrick Engleman was there ahead of time and had previously set up

2

surveillance of the parking lot. Sergeant Walters advised Detective Engleman that Hairston was traveling toward the parking lot, and Detective Engleman observed the black Ford Explorer pull into the lot.

After Hairston arrived in the parking lot, the C.I. walked outside, stood outside Hairston's vehicle, and gave Hairston the money. Hairston handed the C.I. two packages of crack cocaine, and the C.I. returned to the apartment complex, gave the cocaine to Detective Masters, and was again searched by Detective Masters. About five minutes later, Hairston called the C.I. and stated that he had given the C.I. too much of the drug, and the C.I. took the smaller of the two packages of cocaine back out to Hairston.

The following day, the police wished to conduct a second controlled buy and place Hairston under arrest.[1] Detective Masters showed the C.I. a photo array, told her that the photo of the person she knew as Dray may or may not be present in the array, and asked her if she recognized anybody, and the C.I. immediately identified Hairston as the person who had sold her crack cocaine the previous day. The C.I. then called Hairston to purchase additional crack cocaine. Detective Masters searched the C.I. and gave her pre-recorded buy money in the amount of $100. Like the previous day, Sergeant Walters set up surveillance of Hairston's apartment.

About five minutes after being informed that the C.I. had called Hairston, Sergeant Walters observed Hairston and another person exit Hairston's apartment, Hairston enter the driver's seat of the Explorer, and the other person enter the passenger side of the vehicle. Sergeant Walters followed Hairston's vehicle to the parking lot of the C.I.'s

---

[1] Sergeant Walters testified that police "were going to dub him" and that "Dub is short for double B," which was a "buy/bust" where the police "were going to buy the narcotics off of the suspect and then . . . take him down" and "going to arrest him as soon as he left the scene." Transcript at 146.

apartment complex. Like the previous day, Detective Engleman again observed Hairston's vehicle arrive at the lot. The C.I. met Hairston at his vehicle and handed him the $100 of buy money, and Hairston handed the C.I. a package of crack cocaine. Detective Masters performed a search of the C.I. and obtained the cocaine.

Hairston drove away from the parking lot of the C.I.'s apartment complex in the black Ford Explorer, and Detective Mark Brown, who was in uniform, initiated a traffic stop. With the assistance of other officers, Detective Brown placed Hairston and the passenger in custody and searched the Explorer. Detective Brown "located a crack or a little hole in the center console" which was "not part of the vehicle" and discovered the pre-recorded buy money inside. Id. at 180. The substance recovered from the first controlled buy was found to contain cocaine base and had a net weight of 1.09 grams, and the substance recovered from the second controlled buy was found to contain cocaine base and had a net weight of 1.10 grams.

On April 28, 2011, the State charged Hairston with two counts of dealing cocaine as class B felonies. On April 17, 2012, a jury trial was conducted at which the jury heard the testimony of the C.I. and the law enforcement officers who participated in the controlled buys. The jury found Hairston guilty on both counts as charged. The court sentenced Hairston to concurrent terms of twelve years with eight years executed and four years suspended to probation.[2]

---

[2] This sentence is set forth on the trial court's judgment of conviction and in the CCS. The sentencing transcript indicates that the trial court verbally stated that Hairston was sentenced to 16 years with 12 years executed. The parties state that Hairston received a sentence of twelve years with eight years executed and four years suspended to probation and do not raise any issue regarding the discrepancy.

DISCUSSION

The issue is whether the evidence is sufficient to sustain Hairston's convictions. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id.

The offense of dealing in cocaine as a class B felony is governed by Ind. Code § 35-48-4-1, which provides that "[a] person who . . . knowingly or intentionally . . . delivers . . . cocaine or a narcotic drug . . . commits dealing in cocaine or a narcotic drug, a Class B felony . . . ."

Hairston argues that the C.I.'s testimony was sufficiently lacking in credibility to constitute probative evidence whereby a conviction on either count could be sustained. Hairston argues that, although the C.I. indicated that her motives to work as an informant were driven by her desire to do some good in the world, the C.I. "was contradicted in this regard when she at first indicated that she was not being paid to work as a confidential informant but then remembered that she had received $60.00 to serve in that capacity," that the C.I. acknowledged convictions for criminal conversion and for false informing, that she acknowledged a significant benefit in that law enforcement had a warrant recalled so that she would not be arrested, and that the C.I.'s "bias was demonstrated by her admission to having been evicted from her apartment complex." Appellant's Brief at

5

12-13. Hairston further argues that no one other than the C.I. observed the transfer of the crack cocaine from Hairston to the C.I.

The State maintains that, if the C.I.'s testimony had been uncorroborated, it would still be sufficient to sustain Hairston's convictions. The State argues, with respect to the first controlled buy, that the C.I. identified Hairston in a photo array prior to trial, that Hairston was under constant surveillance between when he left his residence driving the black Ford Explorer that was registered to him and when he arrived in the apartment complex parking lot, and that Sergeant Walters observed that Hairston was the only individual inside the Explorer. With respect to the second controlled buy, the State points out that Hairston was in possession of the buy money upon his arrest immediately afterward, that the fact that a passenger was with Hairston does not undercut the inference that Hairston had the buy money because he had conducted the sale, that the money was found in a hidden compartment within Hairston's Explorer that was not part of the design of the vehicle, and that placement of the buy money in a hidden compartment is furtive behavior consistent with Hairston's consciousness that he had completed an illicit drug sale. The State also maintains that the jury rejected Hairston's argument that the C.I.'s testimony lacked probative value because she had prior convictions for unrelated acts of dishonesty or may have had a self-interested reason to work with law enforcement. The State further contends that even if Hairston's argument had merit, it overlooks the corroboration of the C.I.'s testimony by the officers' observations and that, in order for the C.I. to have been dishonest or mistaken about Hairston's identity, the C.I.'s testimony would have to somehow manage to be

coincidentally or miraculously consistent with everything seen by the four officers who coordinated the buys.

Hairston essentially challenges the credibility of the C.I. and the testimony and evidence at trial identifying him as the person who committed the crimes for which he was charged. Identification testimony need not necessarily be unequivocal to sustain a conviction. Heeter v. State, 661 N.E.2d 612, 616 (Ind. Ct. App. 1996). Elements of offenses and identity may be established entirely by circumstantial evidence and the logical inferences drawn therefrom. Bustamante v. State, 557 N.E.2d 1313, 1317 (Ind. 1990). The unequivocal identification of the defendant by a witness in court, despite discrepancies between his description of the perpetrator and the appearance of the defendant, is sufficient to support a conviction. Emerson v. State, 724 N.E.2d 605, 610 (Ind. 2000), reh'g denied. Inconsistencies in identification testimony impact only the weight of that testimony, because it is the jury's task to weigh the evidence and determine the credibility of the witnesses. Gleaves v. State, 859 N.E.2d 766, 770 (Ind. Ct. App. 2007) (citing Badelle v. State, 754 N.E.2d 510 (Ind. Ct. App. 2001), trans. denied). As with other sufficiency matters, we will not weigh the evidence or resolve questions of credibility when determining whether the identification evidence is sufficient to sustain a conviction. Id. Rather, we examine the evidence and the reasonable inferences therefrom that support the verdict. Id.

The record reveals that the jury was presented with evidence regarding the identification of Hairston. The jury heard the testimony of Detective Masters, Sergeant Walters, Detective Engleman, Detective Brown, and the C.I. Detective Masters testified

7

that individuals oftentimes work as confidential informants after they are arrested in order to work off charges or to be paid, but that the C.I. in this case had contacted the police because she had exhausted all possibilities for treatment of cancer and wanted to make amends and do something to feel better about herself. Sergeant Walters identified Hairston in court as the person he observed in the black Ford Explorer. Detective Brown identified Hairston in court as the person he took into custody following the second controlled buy.

The C.I. identified Hairston in court as the person from whom she purchased the cocaine during each of the two controlled buys. Soon after she was called to the stand, upon questioning by the prosecutor, the C.I. testified that she had been convicted for criminal conversion and false informing. When asked to describe her decision to become a confidential informant, the C.I. testified that she had been treated over the last couple of years for lymphoma and had exhausted all the traditional treatments, that she had a history of drug addiction and alcoholism, that she "know[s] what drugs and alcohol have done to [her]," and that she "just want[ed] to do something good with [her] life." Transcript at 79. She also stated that "[i]t didn't have any bearing on any charges," that she "didn't ask for any money for it," and that she contacted the police department and was eventually paid sixty dollars. Id.

The C.I. further testified that she provided Detective Masters with the names of several people from whom she thought she could purchase drugs and that Hairston, who the C.I. knew as Dray, was included among those names. With respect to the second controlled buy, the C.I. stated that she did not know and had no conversation with the

8

person in the passenger seat of the Explorer and that the person "[d]idn't have anything to do with the sale." Id. at 89. The C.I. also indicated, when questioned by the prosecutor, that she gave a deposition in the matter and that, at the request of the prosecutor's office, a warrant related to the C.I.'s criminal conversion conviction was lifted.

On cross-examination, the C.I. confirmed that she had testified she was paid sixty dollars for her work although she had indicated during her previous deposition that she had not been compensated. Also, when asked on cross-examination if she had been evicted from the apartment complex prior to these events, the C.I. responded affirmatively and testified that the eviction was for having unruly guests and that the police had been called because her boyfriend was arrested for domestic battery. Given the testimony and the evidence presented, we cannot say that it was unreasonable for a jury to believe the identification testimony of the C.I. presented by the State. See Emerson, 724 N.E.2d at 610 (holding it was reasonable for a jury to believe in-court identification testimony).

To the extent Hairston argues that the C.I.'s testimony was not credible because she was paid for her participation in the controlled buys, that the prosecutor's office requested that a warrant with respect to the C.I.'s criminal conversion conviction be lifted, and that the C.I. had convictions for criminal conversion and false informing, we note that the C.I. was questioned before the jury regarding these issues and the jury was able to assess the testimony of the C.I. and other evidence presented at trial and determine the C.I.'s credibility. Hairston's arguments regarding why the C.I. should not

9

be believed amount to an invitation that we reweigh the evidence, which we cannot do. See Jordan, 656 N.E.2d at 817.

Based upon our review of the record, we conclude that evidence of probative value exists from which the jury could have found that Hairston committed the charged offenses. See Murrell v. State, 747 N.E.2d 567, 574 (Ind. Ct. App. 2001) (holding the evidence was sufficient to support the defendant's conviction for dealing in cocaine where the jury weighed all evidence regarding identification and chose to believe that the defendant was the person who sold cocaine to an undercover officer where the officer had met the defendant two times and made an in-court identification of the defendant), reh'g denied, trans. denied; see also Ross v. State, 908 N.E.2d 626, 630-631 (Ind. Ct. App. 2009) (holding that the evidence was sufficient to sustain the defendant's conviction for dealing in cocaine where a confidential informant, who did not testify at the trial, participated in a controlled drug buy in a motel room which was monitored by police officers with an audio and video recording device and the motel rooms and the informant were under constant and complete surveillance).

## CONCLUSION

For the foregoing reasons, we affirm Hairston's two convictions for dealing in cocaine as class B felonies.

Affirmed.

RILEY, J., and BRADFORD, J., concur.