## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 23 2015, 9:22 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

Mark Olivero
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Alvin R. Hollis, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

October 23, 2015

Court of Appeals Case No.
02A03-1502-CR-43

Appeal from the Allen Superior Court

The Honorable John F. Surbeck, Jr., Judge

Trial Court Cause No.
02D06-1405-FC-140

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Alvin R. Hollis, Jr. (Hollis), appeals his conviction for resisting law enforcement, a Class D felony, Ind. Code § 35-44.1-3-1(a)(3),(b)(1)(A) (2013); resisting law enforcement, a Class A misdemeanor, I.C. § 35-44.1-3-1(a)(3) (2013); false informing, a Class B misdemeanor, I.C. § 35-44.1-2-3(d)(1) (2013); and failure to stop after an accident resulting in non-vehicle property damage, a Class B misdemeanor, I.C. §§ 9-26-1-4; -8(b).

We affirm.

## ISSUES

Hollis raises two issues on appeal, which we restate as follows:

(1) Whether the State presented sufficient evidence to support Hollis' conviction; and

(2) Whether Hollis' sentence is inappropriate in light of the nature of his offense and his character.

## FACTS AND PROCEDURAL HISTORY

At approximately 2:00 a.m. on May 10, 2014, Officer Robert Warstler (Officer Warstler) of the Fort Wayne Police Department initiated a traffic stop on State Street in Fort Wayne, Allen County, Indiana, after observing a 2008 silver Dodge Caliber exceeding the posted speed limit by fifteen miles per hour. Officer Warstler approached the vehicle and, after asking the driver to produce his driver's license and vehicle registration, explained that his reason for stopping the vehicle was due to a speed limit violation. Officer Warstler

observed that the driver was a black male with long dreadlocks and some facial hair.

[5] The driver handed Officer Warstler a printout copy of the vehicle registration, which did not have the registered owner's name printed on it. He also stated that he did not have his driver's license on him but identified himself as "Shaqueal O'Neal Arrington." (State's Exh. 1). Officer Warstler requested the spelling of his name, and the driver hesitantly stated, "C-H-A-Q-A" before trailing off. (State's Exh. 1). Officer Warstler asked the driver for his "real name," to which the driver again answered that it was Shaqueal Arrington. (State's Exh. 1). In a second attempt to spell his name for the officer, the driver made it as far as "C-H-A-Q-U-A." (State's Exh. 1). When asked his date of birth, the driver hesitated before answering October 13, 1989. The driver indicated that the vehicle belonged to his girlfriend, "Ashley." (State's Exh. 1). Officer Warstler instructed the driver to "sit tight" while he returned to his squad car. (State's Exh. 1).

[6] Moments after Officer Warstler returned to his squad car in order to run the driver's information through his computer, the driver sped away. Officer Warstler activated his lights and sirens and radioed for assistance as he pursued the vehicle through the city streets. "The vehicle was driving recklessly fast to the point that it would have been unsafe for [Officer Warstler] to maintain that speed." (Tr. p. 138). For several blocks, the driver hurtled through intersections without regard for stop signs or other traffic laws. At some point the driver attempted to make a left turn, but he turned too wide and ran over

the curb, slamming into a tree in Lakeside Park. As Officer Warstler approached the scene of the accident, he observed that the driver had exited the vehicle and was fleeing on foot through the park. By this time, other officers had arrived to assist in the search, but they were unable to locate the driver.

[7] When Officer Warstler returned to the crashed vehicle, he discovered a loaded handgun on the passenger-side floorboard. He also located a traffic ticket that had been issued to Hollis several months prior. Officer Warstler ran a check on the license plate and found that it was jointly registered to Hollis and "A[.] Wilson." (State's Exh. 3). "It appeared that [someone named] Ashley signed the registration." (Tr. p. 160). Because searching for the name "Shaqueal Arrington" (using multiple spelling variations) did not yield any results that matched the driver of the vehicle, Officer Warstler searched for Hollis.[1] Upon seeing Hollis' photograph, Officer Warstler "[i]mmediately" identified him as the driver of the vehicle. (Tr. p. 161). Officer Warstler also noted that Hollis' birthday—September 12, 1988—is "one month, one day, and one year off of" the date provided by the driver of the vehicle. (Tr. p. 164).

[8] On May 27, 2014, the State filed an Information, charging Hollis with Count I, carrying a handgun without a license, a Class C felony, I.C. §§ 35-47-2-1; -23(c)(2)(A)(i) (2013); Count II, resisting law enforcement, a Class D felony, I.C.

---

[1] We use the spelling "Shaqueal Arrington" throughout this decision based on the results of the information check conducted by Officer Warstler, who—after trying multiple spelling variations of the name provided by the driver—located a "Shaqueal Arrington" with a date of birth of November 20, 1992, and a photograph that did not match the driver of the vehicle. (Tr. p. 159).

§ 35-44.1-3-1(a)(3),(b)(1)(A) (2013); Count III, resisting law enforcement, a Class A misdemeanor, I.C. § 35-44.1-3-1(a)(3) (2013); Count IV, false informing, a Class B misdemeanor, I.C. § 35-44.1-2-3(d)(1) (2013); and Count V, failure to stop after an accident resulting in non-vehicle property damage, a Class B misdemeanor, I.C. §§ 9-26-1-4; -8(b).

[9] On December 2, 2014, the trial court conducted a jury trial. During his case-in-chief, Hollis testified that he was not driving his Dodge Caliber at the time these offenses occurred; rather, he claimed that he was out of town and had left the vehicle parked at his mother's house. At the close of the evidence, the jury returned a guilty verdict for Counts II, III, IV, and V, and the trial court entered a judgment of conviction on the same. As to Count I, carrying a handgun without a license as a Class C felony, the trial court entered a judgment of acquittal. On January 5, 2015, the trial court held a sentencing hearing. The trial court imposed a sentence of three years, with two years executed and one year suspended, on Count II; one year on Count III; 180 days on Count IV; and 180 days on Count V. The trial court ordered all sentences to run concurrently, resulting in an aggregate sentence of three years, of which two years would be executed in the Indiana Department of Correction and one year would be suspended to probation.

[10] Hollis now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

[11]  Hollis claims that the State presented insufficient evidence to support his conviction. When reviewing a claim of insufficient evidence, it is well established that our court does not reweigh evidence or assess the credibility of witnesses. *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013). Instead, we consider all of the evidence, and any reasonable inferences that may be drawn therefrom, in a light most favorable to the verdict. *Id.* We will uphold the conviction "'if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *Id.* (quoting *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004)).

[12]  Hollis contends that there is insufficient evidence to sustain his conviction because the State "failed to prove the identity elements in each of the [C]ounts." (Appellant's Br. p. 10). As an element for each of the four charges at issue, the State was required to prove beyond a reasonable doubt that it was Hollis who committed the offense. In arguing that the State failed to meet its burden, Hollis points out that the driver of the vehicle identified himself as Shaqueal Arrington—a black male with long braided hair whose photograph "look[s] extremely similar" to that of Hollis. (Appellant's Br. p. 11). Furthermore, Hollis argues that Officer Warstler's "face to face interaction with the driver of the vehicle in question was maybe only fifteen (15) to twenty (20) seconds or more." (Appellant's Br. p. 11). Finally, Hollis cites his own testimony, in

which he denied driving the vehicle at the time of the offenses, positing instead that he left the keys in the vehicle because he believed it was going to be repossessed, so "[i]t was possible that the vehicle was stolen." (Appellant's Br. p. 11).

[13] In this case, Officer Warstler unequivocally identified Hollis as the perpetrator of the charged crimes, and it is well established that "[a] single eyewitness' testimony is sufficient to sustain a conviction." *Emerson v. State*, 724 N.E.2d 605, 609-10 (Ind. 2000). At trial, Officer Warstler testified that during the traffic stop, Hollis' nervousness and evasiveness about his identity—namely Hollis' inability to spell his name and recall his date of birth—prompted Officer Warstler to "pa[y] extra special attention to facial features, things that would help me identify [the driver] when I went back to my car to try and look up the name and match a photo that happened to be in our system to the name that was provided." (Tr. p. 136). Although Officer Warstler's search for a "Shaqueal Arrington" in his system yielded a photograph of a black male with long braided hair, much like Hollis' hair, Officer Warstler immediately recognized that the facial features of Shaqueal Arrington did not match those of the driver. Moreover, Shaqueal Arrington's birthday was November 20, 1992—not October 13, 1989, as the driver indicated. However, as soon as Officer Warstler retrieved a photograph of Hollis, he confirmed that there was not a doubt in his mind that it was Hollis who had been driving the vehicle and who led the police on a dangerous pursuit.

[14] We find Hollis' contention that his conviction should be reversed based on his testimony that he was not driving the vehicle is nothing more than an attempt to have the evidence reweighed in his favor. It is not the role of this court to "weigh the evidence or resolve questions of credibility when determining whether the identification evidence is sufficient to sustain a conviction." *Emerson*, 724 N.E.2d at 610. During the trial, Hollis testified that he drove his "silver Dodge Caliber" home from work just a few hours prior to Officer Warstler's traffic stop. (Tr. p. 187). However, he claimed that he parked the vehicle at his mother's house and left the keys in the console, believing it was going to be repossessed, and that he and his brother subsequently left for Illinois. Despite his claim that the vehicle was subject to immediate repossession, the State presented evidence that the vehicle contained numerous items of personal property, including cellular phones, children's booster seats, loose change, shoes, and clothing. In addition, the driver of the vehicle informed Officer Warstler that his girlfriend, Ashley, owned the vehicle, and Hollis testified that he jointly owned the vehicle with "Ashley Wilson, my ex-wife." (Tr. p. 187). Accordingly, because it was entirely within the province of the jury to believe Officer Warstler's positive identification of Hollis while discrediting Hollis' testimony that he was not driving the vehicle, we affirm Hollis' conviction.

## II. *Appropriateness of Sentence*

[15] Hollis also claims that his sentence is inappropriate in light of the nature of the offense and his character. In this case, Hollis was convicted of one Class D

felony, one Class A misdemeanor, and two Class B misdemeanors. The trial court imposed the maximum sentence for each of the four charges and ordered them to run concurrently, resulting in an aggregate term of three years, with two years executed and one year suspended to probation. *See* I.C. § 35-50-2-7(a) (fixing the maximum sentence for a Class D felony at three years); I.C. § 35-50-3-2 (setting the maximum sentence for a Class A misdemeanor at one year); and I.C. § 35-50-3-3 (providing for a maximum sentence of 180 days on a Class B misdemeanor).

[16] The matter of sentencing "is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). Even where the trial court has imposed a sentence that is authorized by law, as in this case, our court may nevertheless revise the sentence if, "after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "The principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell*, 895 N.E.2d at 1225. "'[R]easonable minds may differ' on the appropriateness of a sentence[,]" but our determination of whether a sentence is inappropriate turns "on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Parks v. State*, 22 N.E.3d 552, 555 (Ind. 2014)

(quoting *Buchanan v. State*, 767 N.E.2d 967, 970 (Ind. 2002)); *Cardwell*, 895 N.E.2d at 1224. Ultimately, "the length of the aggregate sentence and how it is to be served are the issues that matter." *Cardwell*, 895 N.E.2d at 1224. Hollis bears the burden of persuading our court that his sentence is inappropriate. *Sanquenetti v. State*, 917 N.E.2d 1287, 1289 (Ind. Ct. App. 2009).

[17]    In the present case, the nature of the offense is that Hollis was pulled over for a traffic infraction—speeding. He subsequently attempted to hinder Officer Warstler's ability to complete the traffic stop by providing a false name and birthdate. Despite Officer Warstler's clear instruction to "sit tight," Hollis sped away in his vehicle, leading Officer Warstler on a high speed chase through the city streets without regard for stop signs or other traffic laws. (State's Exh. 1). The vehicle pursuit only ended when Hollis lost control of his vehicle and slammed into a tree; yet, he abandoned his vehicle and fled on foot. Hollis acted with complete disregard for the safety of other motorists and pedestrians—such as those people Officer Warstler observed walking their dog in the park as he pursued Hollis. Thus, it is most fortunate that the severity of damage Hollis inflicted was limited to a tree because the consequences of his reckless and selfish conduct could easily have been tragic.

[18]    As to the character of the offender, Hollis has a criminal history that consists of four prior misdemeanor convictions. While this is a relatively minor criminal history compared to others this court has observed, it nevertheless demonstrates his disregard for the laws that govern our society. The fact that Hollis was not leading a law-abiding life is further evidenced by the fact that he apparently did

not possess a valid driver's license at the time of the present offenses. It is also noteworthy that two of his prior crimes are similar in nature to the present offenses: resisting law enforcement in 2011 and operating a vehicle without ever having received a license in 2014. This indicates that Hollis' prior suspended sentences were insufficient to deter him from committing such acts in the future, and a harsher penalty is warranted.

[19] Hollis now contends that "[t]he imposition by the trial court of an executed sentence above the advisory sentence has the unintended result of undue hardship to [his] [four] dependents." (Appellant's Br. p. 13). However, we find Hollis' argument unpersuasive in light of the fact that his PSI report indicates that he is not paying any child support for at least two of his children, and Hollis had not otherwise demonstrated how his children would suffer as a result of his incarceration. Accordingly, we find that Hollis has failed to satisfy his burden of establishing that his sentence is inappropriate.

## CONCLUSION

[20] Based on the foregoing, we conclude that the State presented sufficient evidence beyond a reasonable doubt to prove that Hollis was the perpetrator of the crimes. We further conclude that Hollis' sentence is not inappropriate in light of the nature of the offense and his character.

[21] Affirmed.

[22] Brown, J. and Altice, J. concur